CITY OF UNIVERSITY CITY v. EDWARD G. SCHALL, Administrator of Estate of JAMES F. COYLE, Appellant.

Division One, September 16, 1918.

1. **CITY TREASURER: Custodian of City's Moneys: Agent of Council.** It is not necessary to discuss Section 9371, Revised Statutes 1909, declaring that "the mayor and board of aldermen shall have the care, management and control of the city and its finances," in view of the provisions of Section 9395, declaring that "the treasurer shall receive and safely keep all moneys, warrants, books, bonds and obligations entrusted to his care, and shall pay over all moneys, bonds and other obligations of the city on warrants or orders duly drawn, passed or ordered by the board of aldermen," and in view of a city ordinance declaring that the treasurer shall "pay over all moneys belonging to the city according to law," and in view of the further fact that the money actually passed into his hands

as treasurer. In such case he was not the agent of the mayor or board of aldermen, although they directed him to deposit the money with a certain trust company, subject to their control. The board has no power to interfere with the disposition of city funds which have passed into his hands as city treasurer, whatever its views of the statute may be, and could neither usurp his duties nor exonerate him from liability for city funds in his hands.

2. ———: ———: ———: Public Policy. Sound public policy does not permit a city treasurer to take into his possession in his name as city treasurer funds of the city of which he is treasurer, hold them for years in an account kept in his name as city treasurer, and when called upon for a balance, relieve himself by showing that the mayor and board of aldermen attempted orally to confer upon him the character of agent, so that he might hold the fund for them and withhold it from himself in his character as treasurer.

3. ———: ———: ———: Shown by Oral Evidence. Whether or not the action of the board of aldermen in authorizing the city treasurer to act as their agent in depositing the city's moneys may be shown by oral evidence need not be determined, if the board by ordinance duly passed had no power to exonerate him from liability for city funds which actually came into his hands as city treasurer.

4. ———: ———: Special Deposit. The writing of the words "special deposit" upon the book of the bank in which a city fund was deposited by the city treasurer amounted to nothing under the circumstances of this case, in which there was no suggestion made that the fund was to be segregated from other moneys of the bank and kept intact as a special deposit.

5. ———: ———: Exoneration by Council: Account Stated. The board of aldermen is powerless to exonerate a city treasurer from liability for the balance of a city fund deposited in a bank, where the amount of such balance is undisputed; and where there is no dispute as to the amount, the reports of the treasurer and the report of an auditing committee which examined one of them does not constitute an account stated.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney,* Judge.

AFFIRMED.

*John A. Blevins* for appellant.

(1) Under the evidence it was a question for the jury as to whether the proceeds received from the sale

of the bonds of the city were entrusted to the care and custody of Coyle, as treasurer. (2) Coyle was not responsible for any funds of the city not entrusted to his care as treasurer. Sec. 9395, R. S. 1909; Sec. 8531, R. S. 1909; McMillen on Municipal Corp., sec. 539; Borgnis v. Falk Co., 147 Wis. 327; State v. Grann, 40 L. R. A. 690; United States v. Thomas, 12 Wall. 337. (3) The mayor and board of aldermen had the care, control and management of the fund in question. Sec. 9371, R. S. 1909. (4) The evidence offered by defendant to show the action of the mayor and board of aldermen with reference to the control of checks and proceeds of the sale of the bonds and the deposit in the Trust Company was competent and its rejection by the court was error. Sec. 9371, R. S. 1909. (5) Parol evidence was admissible to show the action of the mayor and board of aldermen with reference to the funds, and the exclusion of the evidence of the witnesses upon that question was error. 28 Cyc. 343; Dillon on Municipal Corp., sec. 557; McQuillin on Municipal Corp., secs. 624 and 625; 17 Cyc. 506; Secs. 9320 and 9321, R. S. 1909. (6) The evidence established the fact that the account between the parties had been stated and settled and plaintiff could not, therefore, maintain this action. Sec. 9368, R. S. 1909; City Ordinance No. 28; 1 Cyc. 364, 367, 454; Lansing v. Woods, 57 Mich. 201; Union Bank v. Knapp, 3 Pick. 96; Allen, v. Nettles, 39 La. Ann. 788; Rawlins v. Rawlins, 102 Mo. 567; Kronenberger v. Binz, 56 Mo. 121; Note L. R. A. 1917-C, p. 447; Note 29 L. R. A. (N. S.) 334. (7) In any event, Coyle was only bailee of the city's money and responsible for the failure to exercise reasonable care. Healdburg v. Mulligan, 33 L. R. A. (Colo.) 461; Borgins v. Falk Co., 147 Wis. 327; Wilson v. People Colorado, 22 L. R. A. (Colo.) 449. (8) The Trust Company was solvent and the deposit of the money with said company was within the exercise of reasonable care. (9) The deposit of the bond money was a special deposit by agreement with the Trust Company and the title never left the city. Merchants Natl. Bank v. School Dist.,

36 C. C. A. 432, 947 Fed. 705; Marine Bank v. Fulton Bank, 2 Wall. 256; Planters Bank v. Union Bank, 16 Wall. 483. (10) Coyle did not receive any of the proceeds of the sale of the bonds and he did not profit one cent from the transaction. The mayor and board of aldermen interfered and actually controlled the funds and by so doing, relieved Coyle of liability. (11) This is not a suit upon the treasurer's bond. A different rule prevails where a suit is upon a bond given by a treasurer whereby he has obligated himself beyond that created by law. (12) The plaintiff city is estopped by its conduct and action and interference with the bond money to assert any claim against Coyle on account thereof. Edward v. Kirkwood, 147 Mo. App. 599; McQuillin on Municipal Corp., secs. 629, 1916 and 1083; 29 Cyc. 476.

*Rodgers & Koerner* for respondent.

(1) The custodian of public funds is liable for money committed to his keeping, and lost through failure of the bank in which deposited. R. S. 1909, sec. 9395; State ex rel v. Powell, 67 Mo. 395; State ex rel v. Moore, 74 Mo. 413; County of Mecklenburg v. Beales, 111 Va. 691, 36 L. R. A. (N. S.) 287; 28 Cyc. 472; State to use, etc. v. Reed, 116 Tenn. 114. (2) Neither the mayor nor the board of aldermen of a municipality have any right to direct how, where, or in what manner funds in the hands of the treasurer shall be kept. R. S. 1909, secs. 9395, 9368, 9363; Butler Co. v. Boatmen's Bank, 143 Mo. 27; Halbert v. State ex rel., 22 Ind. App. 125. The mayor and board of aldermen having no power in the premises, any direction they may have made was a nullity and it is no defense to the treasurer that he followed such direction. Inglish v. State ex rel., 61 Ind. 212; Halbert v. State ex rel., 22 Ind. App. 125. (3) The board of aldermen was required to keep a journal of its proceedings. R. S. 1909, sec. 9320. Hence, the action of the board can be proved only by its records. State v. Lawrence, 178 Mo. 374; Light & Water Co. v.

Lebanon, 163 Mo. 254; Kane v. School Dist., 48 Mo. App. 414; Surveying Co. v. St. Louis, 68 Mo. App. 187. (4) The liability of the custodian of public funds is fixed by law. The bond given by him does not define his liability, but merely super-adds to his personal responsibility the security of his bondsmen. State to use v. Copeland, 96 Tenn. 326. (5) There is no element of estoppel in this case for the reason that Mr. Coyle had no right to act upon any representations the board of aldermen may have made to him. DeLashmutt v. Tettor, 261 Mo. 441. Furthermore, the board of aldermen had no right to make such representations, and there is no evidence that any such representations were made. Wheeler v. Poplar Bluff, 149 Mo. 36. (6) A special deposit is one made with the understanding that the identical money deposited shall be returned to the depositor. Butcher v. Butler, 134 Mo. App. 61; Bouvier Law Dictionary, p. 3098. The fact that the fund here in question was deposited in an interest bearing account and that subsequently a "profit sharing" certificate was accepted for the amount due, conclusively shows that it was not intended as a special deposit.

BLAIR, P. J.—James F. Coyle was treasurer of University City. Appellant is administrator of his estate. The city sued for a balance it alleges Coyle, as treasurer, owed it at the time of his death. The verdict was against the city. A new trial was granted, and the administrator appeals from that order.

The petition alleges the balance is $28,197. It is stipulated this has been reduced by payment of over $17,000 out of the assets of the People's Savings Trust Company. No point is made on the pleadings. One ground upon which the new trial was granted was that the verdict was "contrary to the law."

There is no dispute that bonds for $100,000 were authorized, issued and sold, and that the checks for the proceeds were made out to James F. Coyle, Treasurer of University City; that he endorsed these checks for deposit with the People's Savings Trust Company, and,

in his own hand, made out the deposit slip used in that transaction; that the account was opened by the Trust Company in the name of James F. Coyle, as treasurer of the city, and always carried that way on its books; that the portion of the sum withdrawn, with the exception of one large item, was paid out on Coyle's treasurer's check or paid on warrants issued in the ordinary way and Coyle's check subsequently made to cover the payment. The city does not question the propriety of any of these payments.

Appellant offered oral evidence tending to show that the mayor and aldermen examined the statutes and concluded they had the right to control the fund; that they agreed they would do so; that they directed the deposit to be made in the Trust Company in Coyle's name as treasurer; that the Trust Company offered interest as high as offered by any other and was located in University City; Coyle, the mayor and some of the aldermen were directors of the Trust Company. The city attorney and Coyle took to the Trust Company the checks representing the fund in question; the account was opened, as already stated, and the notation "special deposit" was placed upon the books in connection with the account. A little later the Trust Company issued and delivered to Coyle a pass book marked on cover "Mo. 165, People's Savings Trust Co. By Mail Only. University City, St. Louis, Mo. In account with— Name, James F. Coyle, Treasurer—Town, University City, Mo." In this book appear the deposits, withdrawals and balances. The heading over them is: "Book No. Mo. 165. People's Savings Trust Co. In account with James F. Coyle, Treasurer University City, Mo." This book and other evidence show that the proceeds of the bonds went into this account. On March 24, 1910, the balance was $61,793.16. On that date Coyle demanded the balance. The bank did not have it and Coyle accepted a certificate of deposit for $50,000. This left $11,793.16 in the account. Payments reduced the balance, and on December 3, 1910, Coyle surrendered his certificate of deposit, caused $10,000 to be placed

in the account, and took another certificate of deposit for $40,000. Under like conditions similar transactions occurred. On May 25, 1911, the account showed a balance of $4419.63, and Coyle had in his possession a certificate of deposit for $25,000. The body of the certificate read: "This certifies that Jas. F. Coyle, Treasurer of University City, Mo., has deposited in the People's Savings Trust Company the sum of twenty-five thousand no/Dollars, payable 6 mos. after date on return of this profit sharing certificate of deposit, properly assigned. This certificate is entitled to share in the profits as provided," etc. "This certificate is transferable only in person or by attorney upon the books of the company." This was subject to a contract as to the method of computation and payment of profits. The certificates of deposit previously issued to Coyle were of like character. Payments out of the fund were made on checks signed by Coyle and issued by him in payment of warrants ordered issued by the city council. Some payments seem to have been made by the Trust Company directly to the holder of the warrant. In such circumstances generally Coyle subsequently would issue his treasurer's check to cover such payments. There may have been instances in which no check was issued for payments made on warrants.

The answer avers and the evidence shows that Coyle's reports as city treasurer during the period from January, 1910, to the expiration of his term, contain no reference to the $100,000 fund. They had reference to other funds of the city. The balance (about $2,900) shown by these reports Coyle had paid over to his successors. He paid over no part of the $100,000 fund. His bond was for $5,000 and was executed prior to the issuance of the city bonds. The amount was fixed by ordinance.

It is established that the Trust Company placed the $100,000 deposit with its other funds and paid it out as stated and charged itself with interest on the deposit and treated the deposit as it treated its ordinary de-

posits. The mayor was president of the Trust Company. The city attorney was connected with its legal department. Coyle was a director. The city clerk was its treasurer. Coyle made the deposit and knew, as a matter, of fact, all about the manner in which it was being managed. It never was treated as a special deposit. The Trust Company failed in 1911. Appellant's brief presents several questions.

I. It is contended the checks and money were never entrusted to Coyle's care. It is not denied the checks were made out and delivered to him and endorsed by him and deposited for collection by him, City Treasurer. and the account opened and carried by him, all in his name as city treasurer.

It is argued the evidence tends to show the mayor and board of aldermen took over the fund and Coyle acted as their agent in all these matters. Section 9371, Revised Statutes 1909, provides that "the mayor and board of aldermen . . . shall have the care, management and control of the city and its finances." This is relied upon to show that the board of aldermen had such care and control of the bond proceeds that they might retain custody of them to the exclusion of the treasurer. The question need not be discussed. Section 9395, Revised Statutes 1909, provides that "the treasurer shall receive and safely keep all moneys, warrants, books, bonds and obligations entrusted to his care, and shall pay over all moneys, bonds or other obligations of the city on warrants or orders duly drawn, passed or ordered by the board of aldermen," etc. The applicable city ordinance followed the language of the statute and provided that the treasurer should "pay over all moneys belonging to the city according to law." It is said the evidence tends to show the fund was not "entrusted" to Coyle's care as treasurer, but that he held it as "agent" of the board of aldermen. As pointed out, appellant proved beyond dispute that the money was in Coyle's possession and that all the checks and accounts show

it stood in his name as city treasurer. In our opinion, when he obtained such custody of the fund it was entrusted to his care in the statutory sense and he became responsible for it as treasurer. Concede the board might have retained the fund. It did not do so. It turned it over to Coyle, as treasurer, so far as all the records show. The board then had no power to select a depository for city funds of this character. It had no authority to interfere with Coyle's disposition of funds in his hands as treasurer. It was his duty under the statute to care for funds entrusted to him and respond in case of loss. Whatever advice the board or its members gave him as to a place of deposit, he acted upon it at his peril. The board's view as to its authority under the statute did not bind Coyle. It could neither usurp his duties nor exonerate him from liability for funds in his hands. If he saw fit to accede to a suggestion as to the place of deposit, whether made by the board or by its individual members, this cannot now be used to relieve him of responsibility which the law placed upon him in his official capacity. An ordinance regularly passed by the board and signed by the mayor could not have changed Coyle's status once he secured possession of this city money as city treasurer. We hold that sound public policy does not permit a city treasurer, in circumstances such as appear here, to take into his possession in his name as city treasurer funds of the city of which he is treasurer, hold these for years in an account kept in his name as treasurer and, when called upon for a balance, relieve himself by showing that the mayor and board of aldermen attempted orally to confer upon him the character of agent so that he might hold the fund for them and withhold it *from himself* in his character as treasurer. The easy evasion of liability a contrary holding would permit is sufficient answer to any argument in behalf of such a rule. It may be added that appellant's evidence as epitomized above establishes the fact that whatever effort was made to constitute Coyle agent of the board or city, it con-

clusively appears the fund was not, in fact, confided to him in that capacity. The records put this beyond dispute.

II. The question whether oral evidence of the action of the board of aldermen can be offered in the absence of a record of such action in a case like this need not be determined. In our opinion, the board could not, even by ordinance duly passed, have exonerated Coyle from liability for city funds shown to have been actually in his hands as treasurer of the city.

*Oral Evidence.*

III. The writing of the words "special deposit" upon the bank book is of slight consequence. Interest was to be paid and was paid on the account. The necessary implication was that the funds would be employed by the Trust Company in the usual way. The account was to be and was a checking account in the sense that current obligations payable out of the fund were to be paid and were paid out of it on checks and warrants in a customary way. No suggestion was made or thought of that the money was to be segregated from other moneys of the Trust Company and kept intact as a special deposit. The deposit had no single attribute of a special deposit. The writing of the words on the books amounted to nothing in view of the clear understanding that the account should be dealt with as it was. Further, we think the evidence, as a matter of law, shows Coyle, as treasurer, placed the money in the bank. His liability is absolute, under the rule in this and most other states. [State ex rel. v. Powell, 67 Mo. 395; State ex rel. v. Moore, 74 Mo. 413; County of Mecklenberg v. Beales, 111 Va. 691, 36 L. R. A. (N. S.) 285.]

*Special Deposit.*

IV. The reports of the treasurer and the report of an auditing committee which examined one of them constituted no account stated. As the answer avers, these reports did not include the fund in the Trust

Company. There was no dispute about the portion of the fund expended and there is no such dispute now. There was no controversy about the fund. The board was powerless to exonerate Coyle by express action and, as a consequence, its action or lack of action respecting the reports made could not estop or affect the city.

The trial court was right in granting a new trial on the ground that the verdict was contrary to law. The order is affirmed and the cause remanded. All concur.