BRAGG CITY SPECIAL ROAD DISTRICT v. EVERETT L. JOHNSON ET AL., Appellants.—20 S. W. (2d) 22.

Division One, September 13, 1929.

*Charles P. Williams* for appellant, Independence Indemnity Company.

*Ward & Reeves* for respondent.

LINDSAY, C.—The respondent, plaintiff below, is a special road district in Pemiscot County, organized under the provisions of Article VII, Chapter 98, Revised Statutes 1919. This is a suit upon the bond given by defendant Johnson, treasurer of said district, as principal, and the Independent Indemnity Company as surety, brought in Pemiscot County. The venue was changed to Dunklin County, and judgment went for plaintiff. The cause was submitted upon the pleadings and an agreed statement of facts. Johnson became treasurer of the district on May 1, 1925, and on June 11, 1925, the bond sued on was executed and delivered by him as treasurer, and the Indemnity Company as surety, in the sum of $25,000, whereby the makers bound themselves for the payment of said sum "unto John M. McTeer, president, and R. Nelson, Secretary, acting for and on behalf of" plaintiff. The bond recites that it was to cover the official term of said Johnson from May 1, 1925, to May 1, 1926, or until his successor should be elected and qualified. The condition of the bond is: "That if the above bounden Everett L. Johnson shall faithfully perform all the duties of his office, and shall pay over and account for all funds coming into his hands by virtue of his said office of treasurer as required by law, then this obligation to be void; otherwise to be and remain in full force and virtue."

It is admitted that the successor of Johnson was appointed and qualified on July 22, 1926, and demand was made on Johnson that he account for and pay over to his successor, or to the district, the funds then in his hands as such treasurer, and that he has made no accounting or payment: that between May 1, 1925, and May 1, 1926, Johnson as treasurer had in his hands the funds of the district and that as treasurer he deposited said funds, being all the money in controversy, in the Bragg City Bank, and that said moneys were on deposit in said bank on May 1, 1926, at the time at which said bank failed and closed its doors. It is further admitted that said bank has not paid any dividends to its creditors, and will never pay any dividends; that Johnson as treasurer had the sum of $14,760.97 deposited with said bank during the time covered by his bond: that the Bragg City Bank never gave any bond as depository of the funds of the district and that by failure of the bank, there is a total loss of the funds of the district. The statement further shows that on November 9, 1923, as appears by the minutes of the board of

commissioners of the district, it was ordered that the Bragg City Bank be designated as depository of all funds of the district for a term of three years, and the recital was that the president and secretary of the board were authorized and ordered to enter into a contract with the bank to act as depository for said funds, on condition that the bank act as clearing house for all warrants drawn on the district, and keep an accurate statement of the financial affairs of the district and be able and ready to make a report of the financial standing of the district when called for by the board of commissioners. It is further admitted that the premium, or compensation to the Indemnity Company for issuing and delivering the bond, was paid by the district, and that before delivery of the bond the Indemnity Company, on June 10, 1925, received from the president and secretary of the plaintiff district a communication certifying that said president and secretary had audited the accounts of the treasurer (the predecessor of Johnson) and found the same correct; and, by said communication it was further certified: "The board passed a resolution designating the Bragg City Bank as depository of the Special Road Funds." It is also admitted that the bank never gave a bond as depository, and that the Indemnity Company had no knowledge of such fact, and never made requirement of the giving of a bond by the bank as depository. It is admitted that J. M. McTeer and R. Nelson were respectively president and secretary of the board of commissioners of the district at the time the bond was executed, and prior thereto, and were such at the time of the failure of said bank; also, that J. M. McTeer was the president and active managing officer of the bank for at least two years prior to the time of the execution of the bond, and was such for some months thereafter, and was succeeded as president of the bank by defendant Johnson, who continued as president until after the failure of the bank. It is agreed that the Indemnity Company had no knowledge of the connection of McTeer or of Johnson, with the bank.

Counsel for defendants contend that the commissioners of the district in electing a treasurer and in electing said Johnson as treasurer had authority to prescribe the duties of the treasurer; that through the designation by the board, of the Bragg City Bank as depository of the funds of the district, it became, and was, the duty of the treasurer to deposit all funds of the district in that bank, and that since Johnson as treasurer did deposit all such funds with said bank, there is no liability under the bond for funds so deposited and lost through the failure of the bank. That claim is founded upon the provisions of Section 10806 of the article under which the district is organized. That section is as follows:

"Said board may appoint a treasurer and fix the amount of his bond and prescribe his duties, which said bond shall be filed in the office of the clerk of the county court."

The question before us is one of construction of the statute; and, whether the statute is a legislative grant of authority to the board of commissioners to designate a depository and relieve the treasurer and his surety from liability for the loss of funds, placed with the depository and lost through its insolvency. So far as we can discover, no case presenting the precise question has reached the appellate courts of this State. However, there are two cases dealing with the power of a city council to select a depository for the funds of a city coming into the hands of the city treasurer. That question was before the Springfield Court of Appeals in State ex rel. v. Wilson, 151 Mo. App. 723, and before this court in University City v. Schall, 275 Mo. 667.

In State ex rel. v. Wilson, the action arose as the result of a controversy between the mayor of the city, and the board of aldermen. At the time the controversy between those officials arose, the council of a city of the fourth class had authority to designate and constitute a depository for its "sinking funds held for the payment of outstanding bonds." [Sec. 9363, R. S. 1909.] There was no statutory provision giving authority to select a depository for the general funds of such a city. The council of the city of Mt. Vernon, over the objection and veto of the mayor, proceeded to pass an ordinance providing for the selection of a depository for all the city funds, and further proceeded under such ordinance to select a depository. The decision of the ultimate issue before the court in that case, depended upon the determination of the question of power of the council to pass such ordinance, and select a depository thereunder for all the funds of the city. In the opinion, reference is made to Section 9395, Revised Statutes 1909, which provided for a treasurer of the city to receive and safely keep the city's funds, and provided also that he should give bond. This was an old section. The court also referred to the enactment later, of Section 9363, Revised Statutes 1909, giving power to the council to select a depository for sinking funds, as an amendment to the section relating to the duties of treasurers. The passage of the act giving a city of the fourth class power to select a depository for its sinking funds, was held to be a construction by the Legislature that a city of the fourth class was not given power under the general welfare clause of its charter, to select a city depository for funds not included in the legislative grant of power. The clear meaning of the court was, that the city under its general powers did not have authority to take the custody of its funds away from the city treasurer by the selection of a depository, unless the power was given by the Legislature. The opinion further gives ex-

pression to the rule that where there is a fair and reasonable doubt concerning the existence of power in the charter of a city, it will be resolved against the city, and the exercise of the power denied. The decision was rendered in recognition of the settled rule that municipal corporations possess only such powers as are granted, expressly, or, such as are necessarily incident to or implied in the powers expressly granted.

In University City v. Schall, the transactions out of which the suit arose occurred while the provisions found in the Revised Statutes 1909, were in force, and the opinion shows that University City was a city of the fourth class and that at the time of those transactions the city had been given authority to designate a depository for only its sinking funds. Authority to designate a depository for other than sinking funds was not given until later by the Act of 1911 (Laws 1911, p. 341). In that case the suit was against the administrator of one Coyle, deceased, who had been city treasurer. The particular fund involved in the suit was money derived from the sale of bonds issued by the city, and the proceeds of the sale were turned over to Coyle as treasurer. In that case the defendant in the suit offered oral evidence tending to show that the mayor and aldermen were of the opinion that by the statute they had control and custody of the fund; and, that they directed, but not by ordinance, that the fund should be deposited with a certain trust company in the city. Coyle did deposit the fund with such trust company to his credit as treasurer. The trust company failed. The ultimate question was whether the estate of Coyle was liable for so much of the fund as was lost by the failure of the trust company. The defendant in the action contended that the evidence showed the fund was not entrusted to Coyle, as treasurer, but that he acted as agent for the board of aldermen. This court held, l. c. 675, that even if it were conceded that the board might have retained the fund, it did not do so; but, that it was in fact turned over to Coyle as treasurer, and by him deposited as such with the trust company. Upon that, this court said, l. c. 675: ''The board then had no power to select a depository for city funds of this character.'' This was so, because the funds were not sinking funds. The board had no power to select a depository for such funds because they were not within the express statutory grant of power. The fact that the board attempted to act without the passage of an ordinance, was deemed important. It was said, l. c. 675:

''An ordinance regularly passed by the board and signed by the mayor could not have changed Coyle's status once he secured possession of this city money as city treasurer.''

Farther on and upon the same subject, it was said, l. c. 676:

''The question whether oral evidence of the action of the board of aldermen can be offered in the absence of a record of such action

in a case like this need not be determined. In our opinion, the board could not, even by ordinance duly passed, have exonerated Coyle from liability for city funds shown to have been actually in his hands as treasurer of the city.''

The conclusion to be drawn from these cases cannot be otherwise than that the power of the board or council of a city to select a depository of the city's funds, and relieve the treasurer from liability for money lost, through the insolvency of the depository, does not exist, except, when done by grant of authority from the Legislature. The ruling in the University City case was made in recognition of the rule followed in this State, and generally followed, that the liability of the treasurer of a public corporation for its funds coming into his hands, is absolute. Reference was made to State ex rel. v. Powell, 67 Mo. 395; State ex rel. v. Moore, 74 Mo. 413; County of Mecklenberg v. Beales, 111 Va. 691, 36 L. R. A. (N. S.) 285. The rule is one founded upon considerations of public policy. The statute here relied upon, Section 10806, Revised Statutes 1919, in that it gave the district board power to prescribe the duties of the treasurer, cannot be construed as a grant of power to the board to designate a depository of the funds of the district so that the treasurer will be relieved of all liability for funds lost through failure of the depository. To hold that power to prescribe the duties of the treasurer, includes power in the board to select a depository and relieve the treasurer of liability for funds lost by failure of the depository, would be to hold that under authority to prescribe the duties of the treasurer, the board was vested with an authority, legislative in character—an authority to determine not only that a depository should be selected, and the funds deposited therewith; but also authority to prescribe the manner and conditions under which it should be selected. The contention assumes, and for its allowance must assume, that preliminary to and as a basis for making it the duty of the treasurer to deposit the funds in the designated depository, the board could lawfully contract with a person or corporation to become the depository of the funds, that is, make a contract whereby the depository became the debtor of the district under a contract for such time, and upon such terms, as the board in the exercise of an unbridled discretion might see fit to grant. Under that theory the board could let the money of the district without notice, without competitive bids, without requirement of payment of interest, or the giving of security, for a time only limited by the whim of the members.

The power to prescribe the duties of the treasurer is a power to prescribe his ministerial duties. It could not be made the duty of the treasurer to deposit the funds of the district in a depository selected by the board, unless the board had the legal authority to

select such depository, and had done so in substantial compliance with the authority granted. They could not do that, unless the power was expressly granted, or followed by necessary implication from the powers expressly granted. Under the terms of the bond in suit, the liability of the surety is measured by the liability of the principal. His obligation is that he "shall pay over and account for all funds coming into his hands by virtue of said office of treasurer, as required by law." The bond was so made by the Indemnity Company, with notice that the board had assumed to select a depository for the funds of the district; but, without inquiry, as to the fact, whether such depository was required to give security for the payment of the money, and with knowledge that it was made for the benefit of a quasi-public corporation, whose board of commissioners could have no greater power than that expressly given by the statute, or necessarily implied from the powers expressly given.

We recur to the rulings in State ex rel. v. Wilson, supra, and University City v. Schall, supra, and refer particularly to the statutory provisions in force at the time of the transactions considered in those cases, and which were in contemplation, in making the rulings announced in those cases. The statutory provisions in question are those found in the Revised Statutes of 1909. Section 9395 of that statute provided that the treasurer should receive and safely keep all moneys . . . entrusted to his care, and should pay over all moneys of the city on warrants or orders duly drawn and made by the board of aldermen. The duty to receive and safely keep moneys coming to the treasurer of a public corporation, by virtue of his office, and to pay the same upon the warrants or orders of the constituted authorities of such a corporation, is the fundamental duty of such treasurer and inherent in the nature of his office; and, that was true of the defendant Johnson, upon his appointment and qualification as treasurer of the special road district. In addition to what we have just referred to as to the duties of the treasurer of the city of the fourth class as contained in Section 9395, that section, after enumeration of the duties mentioned, contains the further provision that such treasurer "shall perform such other duties as may be required of him by ordinance." Another section which may be mentioned as part of the charter of a city of the fourth class under the statute of 1909 is section 9327. By that section it was provided: "The duties, powers and privileges of officers of every character in every way connected with the city government, not herein defined, shall be prescribed by ordinance." Under the sections referred to, the board of aldermen was given power to prescribe the duties of the city treasurer not otherwise defined by the statute itself; but clearly it was the ruling in State ex rel. v. Wilson, supra, and University City v. Schall, supra, that the grant of power to prescribe the duties

of the treasurer by ordinance was not a grant of power by ordinance to prescribe the duty of depositing the funds of the city with a depository selected by the board of aldermen, where there was no legislative authority given to select a depository of the funds which were the subject of the action or attempted action of the board.

In the endeavor to construe the statute under consideration, it is proper to bear in mind certain considerations of public policy evidenced by the rulings of the courts of this State, and by the acts of the Legislature in respect to public moneys committed to the hands of the treasurer of a public, or quasi-public, corporation. We have referred to the rule as stated in University City v. Schall, supra, that when the treasurer of a public or quasi-public corporation receives into his hands funds belonging to the public, his liability is that of an insurer. In modification of that, the Legislature has at various times expressly given to cities of different classes, and school districts, and drainage districts, the power to select depositories of public funds; but, under conditions carefully prescribed, and so designed that the selection shall be made pursuant to notice given, upon conditions advantageous to the public, and upon requirement that ample security be given by the selected depository. It has been ruled by this court many times, that in the construction of statutes which are not clear in meaning, the results and consequences of any proposed interpretation of the statute may properly be considered as a guide as to the probable intent of the lawmaker, from the language used. [Kane v. Kansas City, Ft. Scott & M. Ry., 112 Mo. 34; State ex rel. v. Slover, 126 Mo. 652, 661.] A construction of Section 10806 such as is here proposed by defendants, would mean that under the guise of prescribing duties upon the treasurer of a special road district organized under Article VII, Chapter 98, any board of commissioners of such district could select a depository, not pursuant to a method prescribed by general law, nor under requirement of safeguards prescribed for all such districts, nor any safeguards; but, might do so in the exercise of its own discretion, and in accordance with rules, if any, prescribed by the board itself. The construction proposed here could not have been in contemplation of the Legislature.

There is, in the brief of counsel for defendants, the contention that under the circumstances the plaintiff district ought to be held to be estopped to enforce the bond against the Indemnity Company. We hold that this cannot be so, because, the bond is absolute in its terms, and while the Indemnity Company was informed that the board of commissioners had selected a depository, the Indemnity Company was charged with notice that the funds were the moneys of a quasi-public corporation. The plaintiff district cannot be estopped upon the ground that the officers of the district advised the Indemnity

Company merely that the board had selected a certain depository, and thereupon, and because thereof, the Indemnity Company assumed, that the board had authority to select such depository, and that thereby, the treasurer, the principal in the bond, would be relieved from liability for funds lost through the failure of the depository.

We have considered the cases cited, Town of Montevallo v. School District, 268 Mo. 217; Mountain View v. Farmers Telephone Exchange, 294 Mo. 623; County of Cole v. Trust Co., 302 Mo. 222, and other cases dealing with the question of estoppel of a municipal or quasi-municipal corporation. The doctrine of estoppel is applied, but with caution, and only under circumstances clearly demanding its application to prevent manifest injustice. The circumstances of this case do not demand application of the doctrine. The purpose and the terms of the bond were to insure an accounting and payment of the funds of the district coming into the hands of its treasurer. The compensation for making the bond was paid by the district. The Indemnity Company in dealing with the officers and agents of the district were bound by the constructive notice of the law and of the public records made by the officers of the district, as the measure of their authority. [21 C. J. 1193.]

Under the conclusions we have reached the judgment is affirmed. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.