C. E. GLAZE ET AL. EX REL. BOARD OF SUPERVISORS OF HARRISON COUNTY DRAINAGE DISTRICT, APPELLANTS, v. JAMES W. SHUMARD ET AL., RESPONDENTS.—54 S. W. (2d) 726.

Kansas City Court of Appeals. October 3, 1932.

Certiorari denied January 11, 1933.

*Randall Wilson* for appellants.

*George R. Miller,* and *McKnight & Redman* for respondents.

TRIMBLE, P. J.—This is a suit, at the relation of the Harrison and Mercer County Drainage District, on the official bond of James W. Shumard, Treasurer and *Ex-Officio* Collector of the delinquent taxes for Harrison County, Missouri, to recover a balance of $3,184.88, delinquent taxes due said Drainage District, which said treasurer and *ex-officio* collector collected, but which was not received in cash by the Secretary and Treasurer of said District for reasons which will hereinafter appear.

A jury was waived and the cause was tried before, and submitted to, the court. Judgment was rendered in favor of defendant and his sureties. Plaintiffs have appealed.

The bond on which suit is brought is dated April 5, 1925, and was given by James W. Shumard as principal, with the other defendants as sureties, in the sum of $15,000, to the Board of Supervisors of the Harrison and Mercer County Drainage District, conditioned as follows:

"Whereas, the said James W. Shumard was, on the fourth day of November, 1924, duly elected to the office of treasurer and ex-officio collector of the delinquent taxes in and for the County of Harrison in the State of Missouri, and has been duly commissioned. Now, therefore, if the said James W. Shumard shall pay over and account for to the Harrison and Mercer County Drainage District all money received and collected by him as drainage taxes and coming into his hands as such *ex-officio* collector, and belonging to said Harrison and Mercer County Drainage District, according to law, then this obligation to be void, otherwise to remain in full force and effect."

The relator Drainage District was organized by the Circuit Court under what is now Article 1, Chapter 64, Revised Statutes Missouri 1929, (Secs. 10743 to 10808, both inclusive.)

At the trial an agreed statement of facts was introduced, establishing the following:

1. That the Drainage District was organized as above stated.
2. That the plaintiffs are members of its Board of Supervisors.

3. That James W. Shumard was, at the general election in November, 1924, elected treasurer and *ex-officio* collector of Harrison County, Missouri, and, after being duly qualified, discharged his duties as such treasurer and *ex-officio* collector until the expiration of his term; and at the general election in November, 1928, he was reelected, duly qualified and continued to hold said office to the present time and is now discharging the duties thereof;

4. That, as said treasurer and *ex-officio* collector, he, with his said sureties, signed, sealed and executed the bond herein sued on;

5. That G. E. Girdner was, at all the times mentioned in the petition, the duly elected, qualified and acting Secretary and Treasurer of the said Harrison and Mercer County Drainage District;

6. That during the month of March, 1927, James W. Shumard collected back taxes belonging to said Drainage District, amounting to $10,396.32, and between said date and the date of filing this suit, has paid $5,391, and since the filing of this suit has paid $1,820.44, (amounting in all to $7,211.44), and that of the funds so collected. there remains $3,184.88, which it is admitted has been demanded of said defendant Shumard and payment refused.

The answer set up two affirmative defenses:

*First,* That—

"At the May, 1925, term of the County Court of Harrison County, Missouri, the Bethany Savings Bank of Bethany, Missouri, was duly and regularly selected and designated a county depositary by the said court for Harrison County, Missouri, for all funds coming into the hands of the county treasurer in his official capacity as such treasurer and in his official capacity as *ex-officio* collector of the revenue for a period of two years and until 65 days after the time designated by law for the selection of another depositary; that the said Bethany Savings Bank duly and regularly qualified as such depositary, and filed a bond as required by law which bond was regularly approved by said county court. That in pursuance of law, and solely by reason of the designation of the said Bethany Savings Bank, Bethany, Missouri, as county depositary, and not by reason of any desire or selection on his part, the defendant, James W. Shumard, deposited the funds sued for and coming into his hands and belonging to the Harrison and Mercer County Drainage District in the said Bethany Savings Bank; that the said James W. Shumard faithfully, and in compliance with the law, kept all of said money on deposit in the said Bethany Savings Bank. That the said Bethany Savings Bank did on the evening of April 19, 1927, and while said funds were so kept on deposit in said bank, and while said bank was the county depositary, by order of the board of directors, ceased to do business, closed its doors, failed and turned its affairs over to the Commissioner of Finance of the State of Missouri for the purpose of liquidation, and that said funds have been lost to the district

solely by reason of said failure and through no fault or negligence of these defendants or either of them.''

*Second,* That—

''On April 11, 1927, the defendant, James W. Shumard, drew his check upon the Bethany Savings Bank, payable to G. E. Girdner, treasurer of the Harrison and Mercer County Drainage District, in the sum of $10,396.32 and on said date deposited said check in the mail addressed to said G. E. Girdner at Cainsville, Harrison County. Missouri; that the said G. E. Girdner, treasurer, did not properly present said check to the Bethany Savings Bank for payment and unreasonably delayed the presentation of said check to said bank for payment until after it had failed and ceased to do business, and that said fund was lost to the district solely by reason of the negligence of the secretary and treasurer of said district as aforesaid and through no fault or dereliction of duty on the part of the defendant, James W. Shumard; that if the said G. E. Girdner had presented the said check to the said Bethany Savings Bank, upon which it was drawn, within a reasonable time after it was drawn and received by him it would have been paid by the said bank and these funds would not have been lost to the Harrison and Mercer County Drainage District.''

To these defenses a demurrer was filed charging that they failed ''to state facts sufficient to constitute a defense to the cause of action alleged.''

At the same time plaintiffs filed a motion to strike out these defenses—

(1) Because they do not constitute or plead a defense to, or denial of, the cause of action alleged.

(2) Nor do they confess and avoid the cause of action alleged.

(3) Nor do they purport to plead a counterclaim.

The demurrer and motion to strike out were both overruled an'' thereupon plaintiffs filed a reply denying generally everything except the facts herein above shown to have been admitted.

After hearing the evidence, the trial court rendered a general judgment for defendants, no declarations of law or findings of fact being asked or given. Hence we have no means of knowing whether the court found for defendants on the first or second grounds of defense set up in the answer.

Over the objections of plaintiffs, defendants introduced evidence showing that on May 25, 1925, the County Court of Harrison County, by an order of record, selected the Bethany Savings Bank as county depositary for the county funds of Harrison County, Missouri, for the ensuing two years, and ordered said bank to give bond as such depositary as provided by law, which it did, and said bond was approved and ordered filed, conditioned as follows:

''If the said Bethany Savings Bank shall faithfully perform all

the duties and obligations devolving by law upon it as such depositary, and pay upon presentation all checks drawn upon said depositary by the county treasurer of said county, whenever any fund shall be in said depositary belonging to said county, and promptly pay all interest when due, and that all county funds of district school funds and capital school funds shall be faithfully kept by said depositary and accounted for according to law, and if said conditions shall be faithfully kept by said depositary, then this obligation shall be void, otherwise remain in full force and effect.''

James W. Shumard, the defendant county treasurer and *ex-officio* collector of drainage district back taxes, testified that—

During the month of March, 1927, he collected back taxes of said drainage district amounting to $10,396.32 and deposited it in the Bethany Savings Bank, which was then county depositary, ''because it was the depositary of the county court, and the statutes said I would (should) put it there.'' This reference to the statute was objected to as being a conclusion and the court received it as being merely the witness's interpretation of the statute; witness stated he had nothing to do, nor made any suggestion, with reference to the bank's selection as a county depositary; that as soon as the money was in the Bethany Bank, he wrote a check thereon for $10,396.32, payable to G. E. Girdner. secretary-treasurer of Harrison and Mercer County Drainage District, and sent it on Monday, April 11, 1927, through the mail addressed to G. E. Girdner, secretary, etc.. at Cainsville, in said Harrison County. In connection with his testimony said Shumard introduced said check for said sum, dated April 11, 1927, payable to said Girdner, treasurer as aforesaid, marked ''March Collection Drainage Tax,'' along with certain receipts he had inclosed to be signed by said Drainage District Treasurer and returned to the defendant; that nothing was heard from these until defendant received them back from Girdner through the mail on Wednesday, April 20, 1927, together with a letter from Girdner dated at Cainsville, Missouri, April 18, 1927, saying—

''Cainsville, Missouri.
April 18, 1927.

''Mr. J. W. Shumard,
County Treasurer,
Bethany, Missouri.
''Dear Sir:—

''I have been at Princeton from Tuesday of last week until yesterday and for that reason did not get your remittance of drainage taxes until *this morning.* Am a little late in getting the receipts mailed back to you, but am enclosing them herewith. Trust yor

have not been caused to worry that you have not received same sooner.

> "Yours very truly,
> "G. E. GIRDNER,
> "Secretary."

(Italics ours.)

The "Tuesday of last week" mentioned in this letter meant Tuesday, April 12th, and. as letters go from Bethany to Cainsville and are received there the next day, the treasurer of said drainage district, had he been at his office in Cainsville on April 12th, or had left someone in charge thereof, could have deposited the said check in the National Bank of Cainsville, (across the street from his office and where he afterwards did deposit it), on the day he received it, but he says he was away from home and did not receive the check until on Sunday, April 17th, as he stated in one place in his testimony, or, as he said in his *letter*, on Monday morning, April 18th, when he deposited it in the Cainsville bank. There was evidence that the Bethany Savings Bank had ample funds with which to pay the check on April 11th and at all times thereafter until it closed. The evidence is also that, though a silent run on the bank began on Monday, it was Tuesday, April 19th, after four o'clock P. M., that the bank closed its doors, "in order to protect the smaller depositors and make all help stand the brunt." So that, if the Drainage District Treasurer, Girdner, had been at home or left arrangements to receive the check, or if he did in fact, receive the check the next da. after it was sent, or even the day after, April 13th, and had deposited it with the Cainsville bank, then it would, in due course, have been presented to and paid by the Bethany Savings Bank before its closure on April 19th.

Since it is well settled that a public officer is an insurer of public funds which he has lawfully received, unless the Legislature has provided otherwise, it follows that even though the county court of Harrison County did select or appoint the Bethany Savings Bank as the county depositary and the officer deposited said funds there, nevertheless, if the county court had no authority, power or jurisdiction to select a depositary for the funds of the Drainage District, the depositing of such funds by the county treasurer and ex-officio collector, to his account as county treasurer in the Bethany Savings Ban, *was at his peril*. [University City v. Schall, 205 S. W. 631; Bragg v. Special Road District v. Johnson, 20 S. W. (2d) 22; Butler County v. Boatmen's Bank, 132 Mo. 13.]

Did the county court have the power to appoint a depositary for this drainage district organized under what we may, for convenience, term the Circuit Court Drainage Law?

From June 14, 1909, (Laws 1909, p. 386), to March 23, 1915. (Laws 1915, p. 249), the statutes giving county courts power to

appoint county depositaries (Sec. 3803, R. S. Mo. 1909) and to open bids, etc., (Sec. 3805) read as follows:

"It shall be the duty of the county court of each county in this state, at the May term thereof, in the year 1909, and every two years thereafter, to receive proposals from banking corporations, associations or individual bankers in such county as may desire to be selected as the depositaries of the *funds of said county*. For the purpose of letting such funds such county court shall, by order of record, divide said funds into not less than two nor more than ten equal parts, and the bids herein provided for may be for one or more of such parts. . . . Provided, that in counties operating under the township organization law of this state, township boards shall exercise the same powers and privileges with reference to *township funds* as are herein conferred upon county courts with reference to *county funds* at the same time and manner, except that township funds shall not be divided, but let as an entirety." . . . (Italics ours.)

Section 3805:

"It shall be the duty of the county court, at noon on the first day of the May term of said court in 1909, and every two years thereafter, to publicly open said bids, and cause each bid to be entered upon the records of the court and to select as the depositaries of the *county funds*, district school funds and capital funds, not otherwise invested according to law, the banking corporations, associations of individual bankers whose bids respectively made for one or more of said parts of said funds shall in the aggregate constitute the largest offer for the payment of interest per annum for said funds; Provided, that the court shall have the right to reject any and all bids. The interest upon *said county funds* shall be computed upon the daily balances to the credit of the county with each depositary," . . . (Italics ours.)

This last named section was changed in 1915, (Laws 1915, p. 249), so as to read as follows:

"It shall be the duty of the county court, at noon on the first day of the May term in 1915, and every two years thereafter, to publicly open said bids, and cause each bid to be entered upon the records of the court, and to select as the depositaries of *all the public funds of every kind and description going into the hands of the county treasurer, and also all the public funds of every kind and description going into the hands of the ex-officio collector in counties under township organization, the deposit of which is not otherwise provided for by law,* the banking corporations, associations or individual bankers whose bids respectively made for one or more of said parts of said funds shall in the aggregate constitute the largest offer for the payment of interest per annum for said funds: Provided, that the court shall have the right to reject any and all bids. The interest upon each fund shall be computed upon the daily balances

with the depositary, and shall be payable to the county treasurer monthly, who shall place the interest on the school funds to the credit of those funds respectively, and the interest on all other funds to the credit of the road and bridge fund." . . . (Italics ours and show the change made in the section from what it had been.)

Prior to this change, the county court had no power to select a depositary for funds of the Drainage District organized under the Circuit Court Drainage Law. [See State ex rel. v. Patterson, 129 Mo. App. 281.]

We are unable to see how the change thus made in this statute can be deemed to confer power on the county court to select a depositary for the funds of the Drainage District, which is no part or department of the county or its government, but a separate and distinct corporation with its own set of officers, including a treasurer who gives bond to the District for the safe keeping of its funds. Besides, Section 3803, Revised Statutes Missouri, 1909, (now Sec. 12184, R. S. Mo. 1929), being the first section of the chapter on "County Depositaries," and the one making it the duty of the county court to select depositaries, has continued without change, and speaks of "the funds of said county" and the "county funds" as those dealt with and considered in said chapter, and the various changes made in Section 3805, now Section 12184, merely designate different funds of the county by their names, such as "county funds, district funds and capital funds, not otherwise invested according to law." But this can, by no construction, be stretched to mean and include the funds of a separate and distinct corporation such as a drainage district. Under such a construction, interest on the funds of a district would go to the county instead of the district, since it must be paid "to the county treasurer monthly." A grant of power by the Legislature to one municipal corporation, (the county, or the county court), to select a depositary for the funds of another corporation, (the drainage district), and to receive the interest thereon, would be a remarkable and extraordinary grant of power! So much so that it could not be recognized or heeded unless it was so plain and clear in its terms as to leave no room for any other construction, and then its validity would be for the determination of a tribunal other than ours.

It is admitted that Harrison County is under Township Organization as provided for in Chapter 86, Revised Statutes Missouri, 1929; that the Drainage District is one organized by the Circuit Court under Chapter 64, Revised Statutes Missouri, 1929. And the provisions of Section 10796 of said Chapter 64 relating to the extension certification and collection of the Drainage District taxes, as well as the collection of delinquent drainage taxes, are as follows:

"The delinquent drainage taxes shall be certified by the secretary of the board of supervisors to the county treasurer as *ex-officio* collector of delinquent taxes, who shall collect such delinquent drainage

taxes at the same time and in the same manner as is herein provided for the collection of the delinquent drainage taxes in counties not under the provisions of Chapter 86, Revised Statutes 1929. The said treasurer as *ex-officio* collector of delinquent taxes shall give bond, have the same authority to collect such taxes, receive the same compensation therefor and *pay over the said taxes to the treasurer of the drainage district as is provided for county collectors under this article, and shall be subject to the same penalties and liabilities."* . . . (Italics ours.)

Under this section, the duties of defendant Shumard as county treasurer and *ex-officio* collector, with respect to the delinquent drainage taxes, are the same as those of a county collector in a county not under township organization, and those duties are prescribed by Sections 10761 and 10763, Revised Statutes Missouri 1929. The first of these requires the *ex-officio* collector to receive the drainage district tax book, and to collect the taxes; but before doing this, he must execute to the board of supervisors of the Drainage District, a sufficient bond conditioned that he "shall pay over and account for all taxes so collected by him according to law." The second of these, Section 10763, provides a penalty of ten per cent on his delinquency for failure to make prompt payment of taxes so collected. So that the duties of a treasurer and *ex-officio* collector to pay over moneys is very different from those of a county treasurer in withdrawing funds from a county depositary as provided by Section 12195, Revised Statutes Missouri 1929.

It would seem to be clear, therefore, that the Legislature did not intend to, and in fact did not, grant to county courts the power to control the disposition of funds of drainage districts organized as the one in the case at bar was, by selecting depositaries therefor. Any interpretation otherwise would abrogate the above mentioned sections, 10761 and 10763.

Entertaining these views, it follows that our holding must be that the County Court of Harrison County had no power to select a depositary for the funds of the drainage district, and, having no such power, the selection amounted to nothing, and defendant Shumard, county treasurer and *ex-officio* collector, deposited the delinquent taxes he collected in such selected depositary at his peril. It would seem from this, at first glance, that all that remains to be done in this case is to reverse and remand it with directions to the circuit court to render judgment for plaintiffs and against the defendant Shumard and his sureties for the penalty of the bond, to be satisfied by the payment of the sum he has finally failed to pay over, to-wit: $3184.88, together with the further sum of $500.53 penalty, and costs.

But, owing to the way in which it was tried, we are not yet "out of the woods" in the disposition to be made of this case.

As hereinbefore stated, the trial court rendered a general judgment without giving any declarations of law or making any findings of fact, nor was he asked to do either of these things.

An analysis of the evidence disclosed by the record shows that there were funds in the bank amply sufficient to pay the defendant treasurer's check for all of the delinquent taxes he collected, had Girdner, the drainage district treasurer, presented the check sent him on April 11, 1927, at any time before the Bethany Savings Bank closed its doors at four o'clock P. M., Tuesday, April 19, 1927.

There is evidence tending to show that said drainage district treasurer, Girdner, might and could have received Shumard's check as early as the 12th or 13th of April, and if he had, he would have had ample time in which to present and cash the check before the bank closed its doors. The evidence that the check was sent to him on April 11th is corroborated by the date of the check and the date of the receipts inclosed to him for return to the defendant Shumard. Evidence that he, Girdner, did not receive the check until either Sunday afternoon, April 17th, as he says in one place, or Monday morning, April 18th, in another, rests upon the District Treasurer's bare, unsupported word. This, the trial court was not bound to believe or credit. [Thompson v. Royal, 133 S. W. 146.] On the contrary, the trial judge may have found, and could well have found. that the District Treasurer received the check not later than April 12th, and, if, on that day or the next, the check had been sent to the Bethany Savings Bank, it would have been paid. If the check was not paid because the drainage district treasurer neglected, delayed or failed to present the same promptly but carried it until April 18th, then the loss was not caused by the wrongful act of defendant Shumard.

If there is any substantial evidence, though slight, to sustain the trial court's general finding, the appellate court cannot, by weighing and passing on the evidence, find the facts for itself and interfere with such general judgment. There was sufficient evidence to permit the trial court to doubt the evidence that the check was not received before April 18th. Hence, under the rule above noted, we are required to affirm the judgment. It is so ordered. All concur.