## AMERICAN SURETY CO. OF NEW YORK v. CITY OF THOMASVILLE.

### No. 7430.

Circuit Court of Appeals, Fifth Circuit.
Oct. 27, 1934.

Rehearing Denied Dec. 1, 1934.

E. K. Wilcox and T. G. Connell, both of Valdosta, Ga., for appellant.

P. C. Andrews, of Thomasville, Ga., and O. W. Franklin and H. C. Eberhardt, both of Valdosta, Ga., for appellee.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

The American Surety Company, surety on the bond of John W. H. Mitchell, as treasurer of the city of Thomasville, Ga., was held liable for the money of the city deposited by the treasurer in three banks which successively failed in the years 1932 and 1933, and it appeals. The facts were agreed on, and the most material ones follow in order of time: In 1889 the city of Thomasville was created by a public act of the Legislature. Acts 1889, p. 854. Section 2 vested the government of the city generally in a mayor and six aldermen. Section 9 reads in part: "Said Mayor and Aldermen shall have power at any regular meeting to elect a Clerk, a Treasurer * * * and such other officers as they may deem necessary; to * * * take their bonds, and prescribe their powers and duties." Under this power ordinances were passed providing for a treasurer, his oath and bond "conditioned for the faithful discharge of his duty." "It shall be his duty to receipt for, keep and pay out the funds of the City as he shall be authorized by the ordinances there-

of." The authorized mode of paying out money was by checks drawn by the finance committee on the treasurer, to be preserved as vouchers. Other duties, as registrar and issuer of licenses, and in reference to the streets, waterworks, and electric light system, were by ordinance put on him, and for any violation or neglect of duty he was made punishable by fine, suspension, or expulsion, but this not to prevent forfeiture of his bond. In 1902 the Legislature required the treasurer to be elected by the people, but expressly left section 9 of the charter of force otherwise. Acts 1902, p. 640. In 1906 Mitchell took the office of treasurer and held it through 1933. At the April, 1919, meeting of the mayor and aldermen, this appears on the minutes: "The Treasurer was requested to investigate and ascertain the best interest rates that could be secured from the banks on the City's balance of deposit accounts and report to the next meeting." At the next meeting "By a vote of the Council the matter of depository for the City's funds and arrangements for interest on daily balances was referred to the Finance Committee for report." At the June meeting the entry is: "The Finance Committee reported having investigated the matter of depository of the City's funds and interests on daily balances, and recommended [that] the arrangements now in force whereby the Treasurer was authorized to divide the deposits among the local banks where the daily balances were drawing 3% interest, and this report was accepted and approved by a vote of Council."

This action was carried out until 1932 by the treasurer's making deposits in the name of the city of Thomasville, J. W. H. Mitchell, treasurer, and the city collecting and retaining the interest paid, generally 3 per cent. but sometimes less. In January, 1932, the deposits stood divided among the Bank of Thomasville, the First National Bank of Thomasville, and the People's Savings Bank. The first named failed on January 28, 1932. The following day, at a meeting of the council, "People's Savings Bank was designated as depository for baby bond and sinking funds and Marshal's accounts. The First National Bank was continued as depository for the general fund." On July 23, 1932, the First National Bank closed its doors, and on July 25th the council met; the entry being: "Council designates the People's Savings Bank as depository for the general fund." The People's Savings Bank, Mitchell being still in office, failed January 23, 1933. The liquidation of the banks left a considerable

sum unpaid by each, for which the surety on the bond was held liable. Mitchell, it is agreed, did not know or have any reason to believe that either bank was insolvent or in a failing condition. The bond sued on is conditioned that "John W. M. Mitchell shall faithfully discharge his duties as treasurer of the City of Thomasville, Georgia."

In Georgia, as generally elsewhere, it is held that a public official intrusted with public moneys is bound to keep them safely at all events, and is not excused for losses unless perhaps when caused by the act of God or the public enemy. He is not a mere bailee, answerable only for neglect. He cannot ordinarily lend the funds to a bank on general deposit, but is liable if they are thus lost. This was held of a county treasurer in Lamb v. Dart, 108 Ga. 602, 34 S. E. 160; of the bond commission of a city in Wiley v. City of Sparta, 154 Ga. 1, 114 S. E. 45, 25 A. L. R. 1342; and of a county school superintendent in respect of school funds in American Surety Co. v. Ne Smith (Ga. App.) 174 S. E. 262. In the last-named case the county board of education had directed the funds to be deposited in bank, but it was held that the funds were legally in the custody of the superintendent and not of the board, and that he and not they gave bond for them, and that he was not under the directions of the board with regard to them. So in Wiley's Case it was said the city officers had no right informally to direct the bond commission whose office and duties were created by statute. It must be, however, that, if by competent authority public funds are authorized or required to be deposited at a particular place or on particular terms, the official holding them will be protected in so dealing with them. It is no possible breach of duty for him to do so. In Georgia, since 1879, under legislative authority banks have been designated by the Governor to act as depositories of the state's funds. These laws are referred to in Fidelity & Deposit Co. v. Howard (C. C. A.) 67 F.(2d) 961. In 1917 (Acts 1917, p. 199) county treasurers were authorized to deposit county funds in such banks. See Hancock County v. Hancock National Bank (C. C. A.) 67 F.(2d) 421. Since then such depositories have been quite commonly authorized and used; the public funds in most cases drawing interest as for a loan while on deposit. In 1933 (Acts 1933, p. 78) all public officers were required to deposit public funds in public depositories. It is thus evident that for many years the public policy of the state in this regard has been changing.

The original idea of making the official the only custodian of the funds has been yielding to the idea of using them to make interest by depositing them in solvent banks under such safeguards as might be thought necessary.

That what the Legislature itself directs is a protection to an obedient officer no one would question. Now the Georgia Legislature had made no general provision either defining the powers and duties of a city treasurer or specifying what he should do with a city's funds. Respecting the city of Thomasville, it delegated broad legislative powers to the mayor and aldermen with express authority in them to elect a city treasurer if they wished one and to prescribe his powers and duties. The treasurer whom they elected had no duties and powers save what they gave him. He could not look beyond what they prescribed to any controlling statute. As to him, the mayor and aldermen were the Legislature. In 1919, possibly influenced by the legislative example in the act of 1917 providing for banks as county depositories, the mayor and aldermen deliberately in regular meetings investigated the question of using banks as city depositories and the interest that might thus be secured, first through the treasurer, who appears to have begun to practice a plan of division of deposits among the banks at 3 per cent. interest, and then through the finance committee, who reported approval and recommended establishment of the plan, to which a formal vote of ratification was given. The money was deposited accordingly in the name of the city as the city's money, and the interest on it was collected by the city for over twelve years. When the first bank failed, the mayor and aldermen in formal meeting directed deposits in the other banks. Courts cannot question the wisdom of the Legislature in making so broad a delegation of power to the mayor and aldermen, nor the prudence of the mayor and aldermen in appointing depositories without requiring bond from them. The authority was granted the mayor and aldermen to prescribe the powers and duties of the treasurer. Under their first general prescription that he should safely keep the funds and pay them out only according to their ordinances, no doubt he was bound at all events for the safety of the funds under the general rule of law, and was not permitted to deposit them in bank for the city. But their later actions had in regular meeting, as section 9 of the charter requires, were effective to authorize, if not to require, the money to be put at in-

terest in the depositories as though the Legislature itself had taken such action. By so depositing it the treasurer cannot be said to have done contrary to his duty or to have breached a bond conditioned for the faithful performance of it.

This case is distinguished from the Wiley and Ne Smith Cases above cited because the officers there concerned held offices created directly by the Legislature with duties specified by it, and they were not affected by what other city or county officers suggested or required. Similarly distinguishable are the cases relied on from the Supreme Court of Missouri, University City v. Schall, 275 Mo. 667, 205 S. W. 631, and Bragg City Road District v. Johnson et al., 323 Mo. 990, 20 S.W.(2d) 22, 66 A. L. R. 1053. In the former the statute provided that the city treasurer should receive and safely keep and pay over the city funds and the oral directions of mayor and council to put them in a bank of which the mayor was president and the treasurer a director were held not to prevail against the statute. It was also said, obiter, that a formal ordinance would not so prevail. In the case of Bragg City Road District the board had designated as depository for three years a bank of which the head of the board was president and of which the treasurer became the president before it failed. The governing statute gave the board no authority to name a depository, but did give it authority "to appoint a treasurer and fix the amount of his bond and prescribe his duties." This was held to mean only his ministerial duties and not to authorize the loan of money on deposit without bond to this bank. But the mayor and aldermen of Thomasville had authority to prescribe both powers and duties, which amounts to completely regulating the office. We cannot restrict these words to a mere fixing of ministerial duties. Under the agreed facts, the verdict directed was wrong. The loss ought to fall on the city whose council had full power over the treasurer and whose directions he was following, and not on him and his bond. The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

### On Motion for Rehearing.

The motion for rehearing asserts that a portion of the money lost in the bank failures was the city's sinking fund, and that a certain act, Park's Annotated Civil Code, § 467 (a) et seq., as amended, made special provision for its handling and deprived the city council of power to deal with it otherwise. This question was not raised in the trial below, and the facts concerning it are not clear in the record. We express no opinion upon it. It can be dealt with on the general retrial which our judgment of reversal has granted.

Motion denied.