STATE ex rel. WALMAR INVESTMENT
COMPANY, relator, Plaintiff-
Respondent,

v.

Donald E. MUELLER et al., etc.,
Defendants-Appellants.

No. 35320.

Missouri Court of Appeals,
St. Louis District,
Division 1.

July 9, 1974.

Thomas W. Wehrle, County Counsellor, Andrew J. Minardi, Associate County Counsellor, Clayton, for defendants-appellants.

Ziercher, Hocker, Tzinberg, Human & Michenfelder, Robert C. Jones, Clayton, for plaintiff-respondent.

WEIER, Judge.

This case is before this court for the second time. On the first appeal, reported in State ex rel. Walmar Investment Co. v. Armstrong, 477 S.W.2d 730 (Mo.App. 1972), this court reversed the judgment of the circuit court which had affirmed the Board of Building Appeals of St. Louis County. In the contested hearing before the Board no record had been made of the proceedings and it was therefore impossible for the Board to certify a true and complete record on relator's appeal. Absent a record, we reversed the judgment with directions that the determination of the Board be quashed and the case be returned to it for hearing, and a proper record made.

Subsequent to our mandate in the first case, the Board of Building Appeals again held hearings at which time the testimony of witnesses was recorded and upon the completion of the hearings a transcript of the proceedings was prepared.

The evidence reveals that Walmar Investment Company was the owner of a subdivision of land in St. Louis County known as Inverness. Nationwide Lifetime Homes, Inc. was engaged in the construction of homes in the subdivision. In order to promote the sales of these homes, under a lease agreement with Walmar, Nationwide obtained building permits to construct model houses at 3015 and 3019 North Lindbergh Boulevard located on Lot 23 of Inverness subdivision. They were to be erected as display structures only for sales purposes and not to be occupied. On December 17, 1964, after Nationwide had made an assignment for benefit of creditors, the trustee under the assignment offered to transfer by a bill of sale all of the improvements on Lot 23 to Walmar, the owner of the fee simple title. Prior to its purchase of the property, officers of Walmar discussed the purchase with its attorney. He thereupon talked to an employee at the Building Commissioner's office in the County with regard to whether the structures could be used for commercial purposes. This employee, according to the testimony of the attorney, stated that they could be so used. A corporate officer of Walmar had also discussed this matter with the same building office employee and, so this officer testified, he was informed that the "property" could be used for commercial purposes. The buildings were then purchased by Walmar. It is interesting to note that the real property itself was zoned commercial but the buildings could not be used for commercial purposes other than as model display homes. This was for the reason that they were of frame construction and did not comply with the building code then in effect. After being unsuccessful in obtaining occupancy permits from the building officer, an

appeal was taken to the Board of Building Appeals which, under a County ordinance, consisted of the five members of the St. Louis County Building Commission. Being unsuccessful in this appeal, Walmar instituted a certiorari proceeding on July 21, 1965 in the circuit court of St. Louis County. As reported in the previous case hereinabove cited, the circuit court upheld the decision of the Board of Building Appeals. We thereupon reversed and remanded with instructions to quash the record. The Board thereafter held two hearings on July 11, 1972 and August 1, 1972, and the testimony in the proceedings was reduced to writing. The Board again refused to issue occupancy permits for commercial uses to Walmar for the structures addressed as 3015 and 3019 North Lindbergh Boulevard, and ordered that the structures be immediately removed from the premises in compliance with Section 220 of the BOCA Code. A petition for certiorari was thereupon filed on November 8, 1972 in the circuit court, and on February 26, 1973 the court decreed that relator was entitled to occupancy permits for commercial uses for these structures and set aside the Board's determination of November 3, 1972.

The Board has appealed, contending first that the court erred by exceeding its jurisdiction in overruling the Board because the evidence sustained the Board's decision and the court was in error for determining that the Board acted without the limits of its jurisdiction or in abuse of its jurisdiction, the only legal grounds upon which it might quash the Board's action in certiorari. The Board further contends that the court erred in finding that reliance by Walmar upon the statement of the County building employee estopped the Board from denying occupancy permits. Walmar, on the other hand, seeks to sustain the court's decision on the grounds of estoppel by reason of the oral statements made by the building officer and the action of relator in spending substantial sums of money in reliance

thereon. Further, relator contends that the ruling of November 3, 1972 to the effect that it must remove the structures from the property was in excess of the proper authority of the Board in that the issue had not been raised on the appeal before the Board; and since there was no opportunity for relator to meet the issue of removal, it was a deprivation of relator's property without due process of law.

■ We first consider the procedure here used for the review of the determination of the Board, an administrative agency. Review of administrative decisions depends upon whether or not the case is a "contested case" within the meaning of Rule 100.01(3), V.A.M.R. (§ 536.010).[1] A contested case is defined in Rule 100.01(3) as a "proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing; * * *." In a "contested case", one in which a hearing is required, review is by a petition for review; in a case in which no hearing is required by law, review is by one of the methods specified in Rule 100.08, substantially the same as § 536.150. Section 536.150 was enacted as a companion bill to the Administrative Procedure Act. There are numerous cases where agencies act without having a hearing or making a record of the evidence heard. Section 536.150 was designed to provide for the making in court, in a "statutory" certiorari proceeding, of the same kind of record that would be made before the agency in a case reviewable under Article V, § 22 of the Constitution, V.A.M.S. Section 536.150 gave the court the power to hear evidence on the merits of a case so that the court may determine, in the light of the facts as they appear to the court, whether the agency's decision was proper. State ex rel. State Tax Commission v. Walsh, 315 S.W.2d 830, 835 (Mo. banc 1958). The judicial review under this section (now Rule 100.08) is broader in scope than that required by

1. All statutory references are to RSMo 1969.

the constitutional provision for cases in which a hearing is required by law in the agency, being in effect a hearing de novo. State ex rel. Leggett v. Jensen, 318 S.W.2d 353, 358 (Mo. banc 1958).

■ This proceeding was a "contested case" within the meaning of Rule 100.-01(3) in that legal rights, duties and privileges of specific parties have been determined after a required hearing. § 1104.070 St.L.Co.Rev.Ord.; Morrell v. Harris, 418 S.W.2d 20, 22 (Mo.1967). Mo.Const. Art. V, § 22 provides that all final decisions, findings, rules and orders of any administrative officer or body existing under the Constitution or by law, and that affect private rights, shall be subject to direct review by the courts as provided by law. The legislature in 1945 enacted § 536.010 through § 536.140 to implement this provision of the Constitution. These statutes have been largely superseded by Rules 100.01 through 100.07. Rule 41.04. These rules set out the procedures for trial and review of contested cases in administrative agencies. Because this was a contested case, we are governed by them and Walmar should have commenced its contest in the circuit court by filing a petition for review rather than certiorari. State ex rel. Leggett v. Jensen, *supra*, 318 S.W.2d 353, 356 [2]; State ex rel. Bond v. Simmons, 299 S.W.2d 540, 542 [1] (Mo.App.1957). We recognize that under the prior submission of this case on appeal (State ex rel. Walmar Investment Co. v. Armstrong, *supra*) we determine that relator could proceed by certiorari under § 536.150. But upon further reflection, we believe that since this was a contested case, the review should have been by a petition for review. Because the record was inadequate for purposes of review, we properly remanded the cause for a more complete record so that the matter may be properly reviewed. Section 536.150, formerly 536.105, now Rule 100.08, specifically provides in Rule 100.08(b) that it shall not apply to contested cases reviewable pursuant to the previous rules. See *Jensen, supra*, 318 S.W.2d

at 357. Therefore as to the approval of the writ of certiorari we must now abrogate our holding in State ex rel. Walmar Investment Co. v. Armstrong, *supra* insofar as it relates to the use of certiorari in this proceeding. The proper method of review in this present proceeding is by a petition for review rather than by the use of certiorari.

■ But even though the correct method to secure review was not here pursued, the appeal will not be dismissed. The decision of the Board of Building Appeals was approved on November 3, 1972. Within 30 days thereafter, as provided by Rule 100.-04, that is, on November 8, 1972, a petition for writ of certiorari was filed in the office of the clerk of the circuit court. We will therefore consider the petition for writ of certiorari as though it were a petition seeking a review of the administrative decision, and will treat the case as though it were properly appealed to the circuit court. Additionally, because of this indulgence, we have jurisdiction to consider the Board's appeal from the judgment of the circuit court. Ruedlinger v. Long, 283 S.W.2d 889, 890 [1, 2] (Mo.App.1955); State ex rel. Bond v. Simmons, *supra*, 299 S.W.2d 540, 542 [2] (Mo.App.1957).

The ordinances of St. Louis County, §§ 1104.010–1104.070, provide for administrative review by the Board of Building Appeals of any decision of the building officer, but do not provide for appeal from a ruling of the Board of Building Appeals. But as we have previously pointed out, judicial review of administrative decisions applies to all contested cases under Rules 100.01–100.07, unless otherwise provided by statute or rule. And the trial court should, as it did in this case, review the administrative decision; and we, in turn, review that decision as well as the judgment of the court below on appeal. Blunt v. Parker, 495 S.W.2d 708, 711 [1] (Mo.App. 1973).

The circuit court in its judgment following the appeal by Walmar concluded that

the Board's determination made on November 3, 1972 was "illegal", and that Walmar was entitled to the issuance of occupancy permits for commercial use for the two structures addressed as 3015 and 3019 North Lindbergh Boulevard. Although the trial court made no determination with regard to the contention of estoppel, the parties have established this as one of the major issues on appeal. Obviously, in the testimony and the hearings held by the Board, much of the evidence centered around this doctrine to compel the issuance of the occupancy permits. Walmar urges that it relied to its detriment on statements made by an employee in the St. Louis County Building Office and therefore the Board and the County are estopped from denying occupancy permits or from ordering removal of the structures. As previously related, Walmar stressed oral conversations between its attorney and an officer of Walmar with the Building Office employee wherein the Building Office employee allegedly told them that the "structures" or the "property" could be used for commercial purposes. Thereupon Walmar paid off liens against the structures and spent additional sums, investing in all some $12,000.00.

 In cases such as the instant one, involving a governmental body, the doctrine of estoppel is not generally applicable; and if applied, is done so only in exceptional circumstances and with great caution. City of Pacific v. Ryan, 325 Mo. 373, 28 S.W.2d 652, 655 [7, 8] (1930); State ex rel. City of California v. Missouri Utilities Co., 339 Mo. 385, 96 S.W.2d 607, 615 [14] (1936); Board of Public Works of Rolla v. Sho-Me Power Corp., 362 Mo. 730, 244 S.W.2d 55, 60 [8] (banc 1951); Rottjakob v. Leachman, No. 35257 (Mo. App.1974). In fact, in the exercise of governmental functions, the doctrine of equitable estoppel cannot usually be invoked against a municipal or public corporation. State ex rel. Dalton & Stonum v. Reorganized District No. 11, Clinton County, Missouri, 307 S.W.2d 501, 507 [6] (Mo. banc 1957). Further, it is a well established principle in Missouri that a governmental unit is not estopped by illegal or unauthorized acts of its officers. Grand River Tp., DeKalb County v. Cooke Sales & Serv., 267 S.W.2d 322, 325 [4] (Mo.1954); Fulton v. City of Lockwood, 269 S.W.2d 1, 7 [13] (Mo.1954). In this connection, it is recognized that a building permit for construction issued but unauthorized under the ordinance is void and a city is not estopped because its employee issued the license or permit. Bourke v. Foster, 343 S.W.2d 208, 213 [8] (Mo.App.1960).

In three similar cases, Missouri courts have determined that the defense of estoppel has no merit where a building permit was improperly issued by a city official. Eichenlaub v. City of St. Joseph, 113 Mo. 395, 21 S.W. 8 (1893) was a suit to recover damages for tearing down a partly constructed frame house belonging to plaintiff, which was situated within the fire limits of the defendant City. The Supreme Court, in ruling on the estoppel issue, determined that the City was not by an unauthorized act of one of its officials estopped from executing the ordinance prohibiting the erection of wooden buildings in a fire district. In City of Maplewood v. Provost, 25 S.W.2d 142 (Mo.App.1930), the City sought to enforce an ordinance concerned with the provisions of fire limits in the construction and equipment of buildings. Defendant raised the defense of estoppel since the building inspector had issued a permit for defendant to move his building. The court noted that the permit as issued merely authorized the defendant to move the building; but that if the permit had authorized the location of the building in violation of the ordinance, this would have been no justification for the commission of the offense. This is for the reason that a building inspector has no power by the issuance of a permit to amend or repeal an ordinance. Adams v. Board of Zoning Adjustment of Kansas City, 241 S.W.2d 35 (Mo.App.1951) was a certiorari action against the Board of Zoning Adjustment of Kansas City to review an order of the Commissioner of Buildings and Inspection. Plaintiff had been issued

a permit by the Commissioner, first, to make alterations and repairs on the second floor for an apartment, then to convert the second floor into an apartment. Later the Board of Zoning Adjustment disapproved the occupancy. In disposing of plaintiff's contention that the doctrine of estoppel applied against the municipality, the court pointed out that in the enforcement of the zoning ordinance a municipality acts in its governmental capacity as distinguished from its proprietary capacity, and that the doctrine, therefore, could not be used by one who acts under a permit issued in violation of the ordinance.

■ Walmar relies on only one case for support of its defense of estoppel. This case, Murrell v. Wolff, 408 S.W.2d 842 (Mo.1966), involved a permit that had been issued for multiple dwellings on land zoned for a commercial district. This had been part of a comprehensive plan involving approximately 600 acres of land and in which the developer had invested over $1,500,000.00. The city building inspector had issued a construction permit and the Board of Aldermen of the city involved had approved the construction project. Substantial sums had been paid to the city when the plats were offered for record. Then the city changed its position on the erection of multiple unit dwellings. As the court stated at p. 851: "This is an exceptional case in which honesty and fair dealing require that the doctrine of equitable estoppel be applied, in order to prevent manifest injustice." We do not find such exceptional circumstances existing in the case before us. One of the display homes here involved was constructed on a permit to expire June 29, 1962, and the other on a permit to expire July 12, 1962. When R. A. Woodring of Nationwide Lifetime Homes filed the applications for permits, each structure was indicated to be a display house only, for sale purposes and not to be occupied. A letter in the file from R. A. Woodring indicated that the houses were for display purposes only and that they would be removed "in approximately three years". To use a subsequent oral conversation with a building officer, the

details of which are not entirely clear in the record, as a basis for imposing estoppel to authorize permanent occupancy, would be to subvert the law and to allow the interposition of the doctrine to obstruct the enforcement of valid building ordinances and other regulations of land use.

■ St. Louis County, as a charter county, has constitutional authority to exercise legislative power "pertaining to any and all services and functions of any municipality or political subdivision, except school districts, in the part of the county outside incorporated cities; * * *." Mo.Const. Art. VI, § 18(c). Building regulations by a municipality are an exercise of the police power. Fleming v. Moore Brothers Realty Co., 363 Mo. 305, 251 S.W.2d 8, 15 [4] (1952). Hence the County had power and authority to adopt Chapter 1101, known as the Building Code. By this ordinance, the County adopted the building code of the Building Officials Conference of America, Inc., or BOCA as it is commonly known, as the building code of the County. Under this code, § 128 provided that a building official could issue a building permit for temporary construction but the permit should be limited as to time and service, and in no case should such temporary construction be permitted for more than one year. Section 220 of the Code provides that demolition of any construction terminated may be directed by the decision of the Board of Appeals. This was brought out in the hearing before the Board of August 1, 1972. Walmar's contention that the issue of removal was not raised on the appeal before the Board is without merit. The power of the Board was properly established by law and its authority in this respect had been outlined by the Supervisor of Building Regulations for the County in his testimony.

From what has heretofore been stated in this opinion, it is obvious that we do not agree with the trial court in its conclusion that the ruling made by the Board of Building Appeals was "illegal". As to the standards for judicial review of an action of an administrative agency, we have

already expressed ourselves in Hanebrink v. Parker, 506 S.W.2d 455, 457 (Mo.App.1974). Generally, a reviewing court determines whether a decision of any administrative body is supported by competent and substantial evidence upon the whole record. If the agency's findings are supported by competent evidence, then the reviewing court is bound by the tribunal's findings and it matters not that there may be some evidence which would support a finding to the contrary. The only exception is where the findings of the administrative agency are contrary to the overwhelming weight of the evidence. And the weight of the evidence is not determined by quantity or amount, but rather its probative value or its effect in inducing belief. The evidence adduced here appears to be substantial and competent to support the findings and determination of the Board.

The judgment of the circuit court is reversed and the case is remanded with instructions to reinstate the findings and determination of the Board of Building Appeals of St. Louis County, Missouri.

DOWD, C. J., and SIMEONE and KELLY, JJ., concur.