STATE of Missouri ex rel. the
SOUTHLAND CORPORATION,
Plaintiff-Appellant,

v.

CITY OF WOODSON TERRACE, John L.
Brown, Lawrence H. Besmer, Linus Eu-
lentrop, John P. Gerlach, Virgil E. Grif-
fin, Gerald Neuner, William Ratchford,
Gary L. Stroot, James F. Traube and
Dorothy Rickard, Defendants-Respon-
dents.

No. 41646.

Missouri Court of Appeals,
Eastern District,
Division One.

May 20, 1980.

John S. Sandberg, St. Louis, for plaintiff-appellant.

John B. Gray, Clayton, for defendants-respondents.

WEIER, Judge.

The application of The Southland Corporation doing business under the name of 7–Eleven Stores for a package liquor license at 4300 Woodson Road was denied by the Board of Aldermen of the City of Woodson Terrace. Southland then applied for a writ of mandamus to compel the issuance of the license in the St. Louis County Circuit Court. When the writ was denied, appeal was taken to this court. We affirm the circuit court's denial.

Woodson Terrace City Ordinance No. 354 sets out various requirements necessary for approval of an application for liquor license by the Board of Aldermen of Woodson Terrace. Sections 4 and 6 read in part as follows:

"SECTION 4 . . . [N]or shall any corporation be granted a license hereunder unless the managing officer of such corporation is of good moral character and a qualified legal voter and taxpaying citizen of the State; . . . .

SECTION 6. APPLICATIONS FOR LICENSE. Application for a license shall be under oath, on forms supplied by the City Clerk which shall contain the information reasonably required to administer this ordinance and provide the Board of Aldermen with sufficient facts to make the determinations necessary to approval or rejection of and issuance of a license by the Board of Aldermen; and shall be accompanied by a deposit of the annual license fee herein provided."

The ordinance also requires that for every license issued for the sale of intoxicating liquor at retail in the original package, "there shall be paid by the licensee to the City Collector the sum of Fifty Dollars ($50.00) per year. . . ."

The Southland Corporation contends generally that in denying the application for the writ of mandamus, the circuit court erred because Southland had properly filled out the forms supplied by the city clerk, its managing officer was of good moral character and a legal voter and resident of the State of Missouri, and the required fee was tendered with the application.

■ It is well established that cities may fix standards to be met before issuing a liquor license, the only requirement being that the ordinance must not conflict with the state statute. *State ex rel. Kemerling v. Peterson*, 240 Mo.App. 700, 214 S.W.2d 739, 741[1–3] (1948). In a mandamus proceeding, in the absence of evidence from which a contrary determination can reasonably be found or inferred, it is presumed that municipal authorities act legally and are influenced by proper motives. *State ex rel. Kopper Kettle Restaurants, Inc. v. City of St. Robert*, 424 S.W.2d 73, 78[9] (Mo.App.

1968). The issuance of a license, however, may be compelled by mandamus where the pleadings and the evidence conclusively show that the relator is in every way qualified and the only question to be resolved is one of law. *Id.* at 80[17]. And in establishing its qualifications, relator has the burden of proof. *Id.* at 79[13]. We examine the pleadings and the evidence in the instant matter to determine whether these standards have been met.

When Mr. Daniel Ballard who styled himself as "buyer-merchandiser and managing officer of 7–11 Stores" filed with the City of Woodson Terrace a verified license application for the store at 4300 Woodson Road, no license fee was deposited at that time with the city clerk. In defense of its failure to tender the fee when filing the application, Southland submitted that the city clerk told Ballard that the fee need not be paid until the application was acted upon and the license granted. Dorothy Rickard the city clerk testified that at the time when the application form had been submitted seeking the license she customarily told whoever came in for that purpose to wait and send in the check after the application was approved by the board; that practice had been changed since then; this was the way she intended to handle the Southland application.

Although the petition in mandamus filed by relator recites generally that all information required by the application form was furnished to the respondents and that relator complied with the requirements of the ordinance, there is no specific allegation that a tender of the required fee payable to the collector in the sum of $50 was made. The city clerk testified that she had never received any check or money from the applicant. She did not recall any conversation with Mr. Ballard, the person who brought in the application with regard to the payment or tender of the fee although she admitted that it was her practice at the time not to require such a payment or tender before the application was filed. A copy of a certificate of incorporation or license to do business in Missouri indicating the legal status of the applicant was never

filed nor was there filed any affidavit or other evidence indicating the capacity of Mr. Ballard, the person who signed the application.

Payment of a license fee is deemed a reasonable requirement and the denial of a license where such fee has not been paid is proper. *State ex rel. Bigham v. Williams*, 297 Mo. 607, 250 S.W. 44, 45[1] (banc 1923). The ordinance specifically requires that the application must be accompanied by a deposit of the license fee. Since mandamus will not issue to compel the issuance of a liquor license unless all statutory and ordinance requirements are satisfied, the license was properly denied.

In defense of its failure to pay the licensing fee upon tender of the application, Southland submits that the city clerk told Mr. Ballard the fee need not be paid until the application was acted upon and the license granted. Although testimony revealed that the city clerk did in fact indicate such a course of action may have been permissible at the time, respondents are not estopped from asserting noncompliance as a legitimate ground for refusing to issue the license in this case. Estoppels are not favored by the law and will not be casually invoked. *Dickinson v. Bankers Life & Casualty Company*, 283 S.W.2d 658, 663[9] (Mo. App.1955); *John Hancock Mutual Life Insurance Company v. Dawson*, 278 S.W.2d 57, 60[6] (Mo.App.1955). The doctrine of estoppel is not generally applicable against a governmental body. If it is applied, it is done so only in exceptional circumstances and with great caution. *State ex rel. Green's Bottom Sportsmen, Inc. v. St. Charles County Board of Adjustment*, 553 S.W.2d 721, 726[7] (Mo.App.1977). It is a well-established principle in Missouri that a governmental unit is not estopped by illegal or unauthorized acts of its officers. *State ex rel. Walmar Investment Company v. Mueller*, 512 S.W.2d 180, 184[4] (Mo.App. 1974). At best in the instant case the city clerk made a determination that an explicit mandatory provision of an ordinance need not be complied with. At the time that she

did so, she had no authority to eliminate this particular requirement. Such action is not binding upon the municipality. Municipal corporations are not estopped by the unauthorized acts of its officers or agents. *Fulton v. City of Lockwood*, 269 S.W.2d 1, 7[13] (Mo.1954); *Grauf v. City of Salem*, 283 S.W.2d 14, 17[5] (Mo.App.1955). As was stated in *Fulton, supra* at 8: "The protection of the public and the declared public policy requires public officials to comply with mandatory statutory provisions, and such requirements may not be avoided by a compliance only when the official sees fit to comply."

■ We do not deal here with a situation in which the procedural requirements of Woodson Terrace in this matter were hidden from the relator. The clear dictates of the ordinance put the relator on notice of the particular requirements. A key element of estoppel is that the "truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time when such conduct was done, and at the time when it was acted upon by him." *Taylor v. Farmers Bank of Chariton County*, 135 S.W.2d 1108, 1111[5] (Mo.App.1940). *See also United Finance Plan, Inc. v. Parkview Drugs, Inc.*, 250 S.W.2d 181, 184–85[3] (Mo.App.1952). Relator knew the requirements as to payment of the fee when it filed the application. It cannot now claim ignorance of this requirement.

Relator here like the relator in *State ex rel. Walmar Investment Company v. Mueller, supra* at 185, relied upon the case of *Murrell v. Wolff*, 408 S.W.2d 842 (Mo.1966) for support of its defense of estoppel. For the same reasons that are given in *Walmar*, that is, the unusual and exceptional circumstances that were existing in *Murrell*, we do not consider it applicable here.

■ Turning now to the question as to whether Mr. Ballard was a "managing officer," supports the denial of the application for license because the board of aldermen could find and infer therefrom that he did not act in that capacity. During cross-examination he modified his original testimo-

ny to the effect that he was managing officer and buyer-merchandiser of the company to indicate that he was buyer-merchandiser for the mid-west division of the company. In addition to a buyer-merchandiser, the mid-west division office located in St. Louis included a controller, a construction manager, a real estate department, a security department, and the personnel department. Over all of these was the division manager. He was the superior officer of all those in the mid-west division. His name was Edd Gibson. Mr. Gibson had no part in filing the application. It is contended by the respondents that since Ballard occupied a subordinate position, and was not in charge of the office, he was not the "managing officer" of the company. Rather Edd Gibson was in that position. The moral character and qualifications as a legal voter and taxpaying citizen of Mr. Gibson would therefore be in question rather than the qualifications of Mr. Ballard. We are of the opinion that the respondents' position on this matter is correct. A "managing officer" of a corporation would normally be considered an executive officer whose authority and powers are such that he is regularly in control of the operations and business of the corporation. He is not one who is ordinarily charged with the performance of other and subordinate duties. Such was the construction placed upon the phrase when it was used as to those persons named in § 525.050, RSMo 1978, upon whom notice of garnishment may be served. *C. Rallo Contracting Company v. Blong*, 313 S.W.2d 734, 738[3, 4] (Mo.App.1958). *State ex rel. Associated Transport Corporation v. Godfrey*, 464 S.W.2d 776, 778–779[1] (Mo. App.1971).

Although mandamus will lie to compel the issuance of a liquor license by a city when the pleadings and the evidence show that relator is in every way qualified to be licensed, *State ex rel. Kopper Kettle Restaurants, Inc. v. City of St. Robert, supra* at 80, it would appear that in this case relator failed to carry the burden of pleading and proving that the application was made by the managing officer of the corporation. It

also failed to prove the moral character and other qualifications of the managing officer. It further failed to plead and prove that the application for the license was accompanied by a deposit of the annual license fee as required by the ordinance. Because of this resolution of these issues, other contentions of relator need not be discussed.

The judgment is affirmed.

STEWART, P. J., and CRIST, J., concur.