**McDONALD SPECIAL ROAD DISTRICT, Dale Craig and Ann Hannekan, Commissioners of the McDonald Special Road District, Plaintiffs-Appellants,**

v.

**Lynn A. PICKETT, Elva L. Pickett, and the Missouri State Highway and Transportation Commission, Defendants-Respondents.**

No. 13423.

Missouri Court of Appeals,
Southern District,
Division One.

July 9, 1985.

Joe R. Ellis, Donald L. Cupps, Ellis & Ellis, Cassville, for plaintiffs-appellants.

Michael D. Garrett, Carr L. Woods, Garrett & Woods, Monett, for defendants-respondents Lynn A. Pickett and Elva L. Pickett.

FLANIGAN, Judge.

Plaintiff McDonald Special Road District, ("the district"),[1] brought this action against defendants Lynn A. Pickett, ("Pickett"), his wife Elva L. Pickett, and the Missouri Highway and Transportation Commission, ("the commission"). The petition was in two counts. Count I, directed against the Picketts, alleged that the Picketts owned land in Barry County, across which "is a public road easement" which had been used by the public since 1955; on November 12, 1981, the Picketts "placed a fence and other obstructions" across the public road, preventing the public from using same; the Picketts plowed the public road and damaged it; the district had been damaged in the amount of $3,000 by reason of the conduct of the Picketts. The prayer of Count I sought an injunction restraining the Picketts from obstructing and damaging the public road, together with damages.

Count II, directed against the commission, incorporated most of the allegations of Count I and then alleged: On March 12, 1981,[2] the commission excavated a ditch which blocked the public road at the point where the public road intersected with Missouri State Highway C, thereby effectively blocking it "from transit"; the public road was closed "without following the proper [statutory] procedure for closing a public road." The prayer of Count II sought an injunction restraining the commission from blocking the public road and maintaining the ditch. The prayer also sought an order requiring the commission to fill the ditch.

The trial court, sitting without a jury, sustained the commission's motion to dismiss filed at the close of plaintiff's evidence. That ruling was not challenged and the commission is no longer in the case.

Upon completion of the evidence the trial court took the matter under advisement and later entered a judgment, accompanied by a memorandum opinion, finding the issues generally on Count I against the district and its co-plaintiffs and in favor of the defendants Pickett. Plaintiffs appeal. The district and the individual plaintiffs join in the same brief and in the interest of simplicity the appeal will be considered as if it were that of the district alone.

---

1. Co-plaintiffs were two of the commissioners of the district. The petition alleged that the commissioners "are instituting this action on behalf of the McDonald Special Road District." The briefs of the parties do not mention the necessity or propriety of the joinder of the commissioners. Defendants Pickett did not challenge the district's "legal capacity to sue," see Rule 55.27(a), or its standing to bring this action.

All references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1978, V.A.M.S.

2. The evidence showed the true date was March 10, 1982.

The segment of the public road which crossed the Pickett land was called Road A during the trial and it will be so referred to in this opinion. Although many of the trial court's findings and conclusions were in favor of the district, the trial court denied relief to the district because "all of the elements of equitable estoppel are present."

On this appeal the district asserts that the record was insufficient to support the trial court's application of the doctrine of equitable estoppel. The district argues that the trial court based its judgment on the conduct of previous commissioners of the district and their dealings with the Picketts. The trial court erred in doing so, argues the district, because "the actions of the previous road commissioners were not within their statutory powers and such illegal or unauthorized acts cannot be the basis for equitable estoppel against a governmental body." For the reasons which follow, this court holds that the district's appeal is meritorious.

Section 228.190 reads:

All roads in this state that have been established by any order of the county court, and have been used as public highways for a period of ten years or more, shall be deemed legally established public roads; and all roads that have been used as such by the public for ten years continuously, and upon which there shall have been expended public money or labor for such period, shall be deemed legally established roads; and nonuse by the public for five years continuously of any public road shall be deemed an abandonment and vacation of the same.

The trial court's findings, supported by the record and not seriously disputed, require the conclusion that Road A was a "legally established road" because it had "been used as such by the public for ten years continuously, and upon which there [was] expended public money or labor for such period."

Willow Branch Road intersects Highway C. It is a T intersection because Willow Branch Road ends at Highway C. Road A is that portion of Willow Branch Road which crosses the Pickett land, which adjoins Highway C. For the purpose of this opinion it will be assumed that Road A runs generally east and west. The west end of Road A intersects Highway C at a right angle.

Road A came into existence in 1956 and was used until November 1981 when Pickett fenced the east and west ends of Road A, blocking access to it. The evidence showed that Elva Pickett participated in the fencing. Prior to 1956 Willow Branch Road crossed another portion of the Pickett land. That portion, a segment of Willow Branch Road, was called Road B. Road B was a public road prior to 1956 but after that year, when the use of Road A began, Road B fell into disuse. The evidence is clear that Road B was abandoned and vacated by reason of "nonuse by the public for five years continuously." § 228.190.

The principal defense witnesses were Billy Wolf and Cecil Hollingsworth who were commissioners of the district in 1981 but left office in April 1982 when they were succeeded by the district's co-plaintiffs.

Billy Wolf testified that he was a district commissioner "when Road A was closed and Road B was reopened in 1981." Wolf took the district's road grader and reopened Road B. "I discussed this with the other [district] commissioners before I did it and they agreed. I also talked to Maroney of the [commission] and Pickett and no one told me I should not open up Road B." Significantly, Wolf testified that Pickett "asked me to close Road A and I called each of the other commissioners and all of us decided that Road A should be closed and Road B opened."

Cecil Hollingsworth testified that in 1981 he was serving as a district commissioner. "Bill Wolf wanted me to shut off Road A and reopen Road B and we did. We graded Road B and told Pickett to put up a fence on Road A."

Dale Craig, a witness for the district, testified that he became a district commissioner in April 1982. Craig recounted a

conversation which he had with Pickett prior to Pickett's fencing Road A in November 1981. Pickett told Craig that he, Pickett, had talked to the members of the county court individually and had asked that Road A be closed. The county court members, according to what Pickett told Craig, asked Pickett, "What will it do to your neighbors down there." Pickett replied, "Dale Craig is baling hay for me, it's okay with him, and it's okay with Tom Gurney and Bob Hannekan." Craig further testified that in February 1982, after he had learned that Pickett had made that statement to the county court members, he confronted Pickett "about using our names." Pickett did not answer Craig. The next day Pickett came to Craig's lumber yard and said, "Dale, I would like to make public my apology.... I used yours and Tom Gurney's and Bob Hannekan's names to the county court and I should not have done that." That testimony was not denied by Pickett who, although present at the trial, did not testify.

■ When Road A became a legally established public road, long prior to 1981, the right to use it as a public highway became vested in, and inured to the benefit of, the public. *Oetting v. Pollock*, 189 Mo.App. 263, 271, 175 S.W. 222, 224 (1915). Absent vacation in a statutory proceeding under Chapter 228, that right of use could not be divested except upon abandonment of Road A for nonuser by the public for five years continuously. *State v. Lewis*, 294 S.W.2d 954, 958[4] (Mo.App.1956). To similar effect see *Osburn v. Supreme Exp. & Transfer Co.*, 590 S.W.2d 360, 366 (Mo. App.1979); *Hedges v. County Court for Ray County*, 581 S.W.2d 73, 77–78[3] (Mo. App.1979).

The procedure for vacating a public road is set forth in § 228.110 which, in general, requires the filing (with the county court) of a petition for vacation by 12 freeholders of the township or townships through which the road runs, two public readings of the petition, the posting of notices of the filing of the petition in at least three public places, the serving of a copy of the petition upon nearby residents, the opportunity to file a remonstrance by at least 12 freeholders, and favorable action by the county court.

The district introduced the testimony of the county clerk that there were no records of any action taken by the county court with respect to the vacation of Road A. Several nearby residents testified that they received no notice that Road A was to be vacated. In short, there was no compliance with § 228.110 with regard to vacating Road A and the Picketts do not claim otherwise. It is also clear that Road A was not abandoned for the period required by § 228.190.

Although the evidence made it clear that Road A was neither abandoned nor vacated, the trial court "reluctantly" reached the conclusion that the district was equitably estopped because of the following findings: The district, through its then commissioners Wolf and Hollingsworth, "contacted [the commission] to cut the access of Road A to State Highway C"; the commission, through its area supervisor Maroney, ordered the access to Road A cut; [the commission] cut the access to Road A pursuant to its police powers and at the special direction and request of representatives of [the district]; *"in reliance upon the plaintiff McDonald Special Road District,* defendants Pickett constructed a fence across Road A and caused Road A to be disked and sown in grass." (Emphasis added.)

The trial court made no express finding with regard to the date that the commission "cut the access" of Road A to State Highway C. That was done by the digging of a ditch at the west end of Road A by the commission's employees. The only evidence concerning the date of the ditch digging came from the district's witness Ann Hannekan and Picketts' witness Cecil Hollingsworth. Those two witnesses agreed that the ditch digging took place on March 10, 1982, which was, of course, several months after Pickett had blocked Road A by fencing off both ends of it. Thus the installation of that ditch played no role in

inducing Pickett's wrongful conduct with respect to Road A.

The commission was made a party to the action only after defendants Pickett had filed a motion to dismiss based on its non-joinder. The answer of the commission admitted that it did cut a ditch, on the state right-of-way, between Road A and State Highway C. The answer further alleged, however, "that to remove the ditch from its right-of-way and open it up to [Road A] will not cause [the commission] any damage." The commission's answer further alleged that it was not a proper party to this action and then stated:

Even should this defendant be a proper party to this suit it asserts that it does not care where the entrance to the public road owned by [the district] is located, so long as it is determined by this court that an easement in favor of [the district] does in fact exist at the location of the entrance desired. Should this court decide that there is an easement in favor of [the district] for a public roadway at the location where a ditch was carved out, then this defendant will gladly issue a permit to [the district] for an entrance to that roadway at that location.

The ditch, which the commission dug at the west edge of Road A and which parallels Highway C, was filled in at the juncture of Road B and Highway C. The ditch is on the state right-of-way. It is clear that it is a matter of no moment to the state whether that ditch exists at the juncture of Road A with Highway C or at the juncture of Road B with Highway C. More importantly, the relocation of the ditch took place after Pickett's wrongful conduct. There is no merit in Pickett's contention that the closing of Road A was justified as an act of sovereignty on the part of the commission.

Estoppels are not favored by the law and will not be casually invoked.... The doctrine of estoppel is not generally applicable against a governmental body. If it is applied, it is done so only in exceptional circumstances and with great caution.... It is a well-established principle in Missouri that a governmental unit is not estopped by illegal or unauthorized acts of its officers....

*State, Etc. v. City of Woodson Terrace,* 599 S.W.2d 529, 531 (Mo.App.1980) (authorities omitted).

■ "The protection of the public and the declared public policy requires public officials to comply with mandatory statutory provisions, and such requirements may not be avoided by a compliance only when the official sees fit to comply." *Fulton v. City of Lockwood,* 269 S.W.2d 1, 8 (Mo.1954). One dealing with a municipal or county government must take notice of the limitations on the power and authority of the representatives with whom he deals. *County of St. Francois v. Brookshire,* 302 S.W.2d 1, 4 (Mo.1957). "The unauthorized acts of public officials are, and in law are known to be, unauthorized and consequently not binding on the principal, their mistakes being their own and not the mistakes of the sovereign. All this rests in a sound public policy for the protection of the public." *Elkins-Swyers Office Equipment Co. v. Moniteau County,* 209 S.W.2d 127, 131 (Mo.1948). See, generally, 1 A.L.R.2d 338 —Estoppel—Governmental Bodies.

■ A special road district is a quasi-public corporation and as such is entitled to the benefit of the rule that the doctrine of estoppel is applied with caution and only under circumstances clearly demanding its application to prevent manifest injustice. *Bragg City Special Road Dist. v. Johnson,* 323 Mo. 990, 20 S.W.2d 22, 26 (1929). In *Bollinger County v. Ladd,* 564 S.W.2d 267 (Mo.App.1978), an alleged oral agreement between a landowner and judges of the county court, whereby the judges agreed to abandon a county road and return it to the landowner in exchange for right-of-way for a new road, was void and no legal liability was created on the theory of estoppel even where the landowner had performed his part of the oral agreement.

■ In the case at bar defense witness Billy Wolf, a district commissioner in 1981, testified that Pickett asked him to close Road A. Wolf, and the district itself, of

course had no authority whatsoever to vacate Road A. That authority, under § 228.-110, was vested solely in the county court to be exercised by that body only in the manner prescribed by that statute. The Picketts made no effort to comply with the statute. To permit the Picketts to relocate Road A by the methods employed here would thwart the legislative intent and would promote scheming and contrivances between a landowner and public officials who lack the authority to act in the manner requested.

This court holds that the conduct of the Picketts in constructing a fence across Road A, thereby blocking access to it, and in causing Road A to be disked and sown in grass, was unlawful and that the conduct of the prior commissioners of the district in encouraging that conduct or in participating in it constitutes no basis for invoking the doctrine of equitable estoppel against the district.

The district was entitled to the injunctive relief prayed for under Count I of the petition. The district introduced evidence to the effect that restoring Road A to its original condition would entail expenses of $3,000. That evidence was not seriously contested. Under Rule 84.14 it is the duty of this court to dispose finally of the case unless justice otherwise requires.

The judgment is reversed and the cause is remanded with directions to the trial court to set aside its former judgment and to enter a new judgment finding the issues on Count I in favor of plaintiff McDonald Special Road District and against defendants Lynn A. Pickett and Elva L. Pickett, enjoining said defendants permanently from obstructing and damaging Road A, as said Road A is described in the stipulation of the parties, and further enjoining said defendants permanently from maintaining any barriers across said Road A; awarding plaintiff McDonald Special Road District damages in the sum of $3,000 on Count I against said defendants; denying plaintiffs Dale Craig and Ann Hannekan relief on Count I; denying all plaintiffs relief on Count II; and taxing all costs, including the costs on appeal, against defendants Lynn A. Pickett and Elva L. Pickett.

It is so ordered.

TITUS, P.J., and GREENE, J., concur.