Frank J. DODGE and Myrna Dodge, his wife, and William C. Parmenter and Carma S. Parmenter, his wife, Plaintiffs–Respondents,

v.

Janet WILES and Jim Wiles, her husband, Defendants–Appellants.

No. 15455.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 26, 1989.

Motion for Rehearing and Transfer Denied and Overruled Feb. 17, 1989.

Application to Transfer Denied April 18, 1989.

Scott B. Stinson, Mountain Grove, for defendants-appellants.

Bob House, Ava, Harry R. Stafford, Hartville, for plaintiffs-respondents.

MAUS, Judge.

In this action the plaintiffs, Frank J. Dodge and Myrna Dodge, his wife, and William C. Parmenter and Carma S. Parmenter, his wife, sought an injunction restraining the defendants, Janet Wiles and Jim Wiles, her husband, from obstructing a public road. The defendants presented two defenses. First, the portion of the public road in question had been abandoned. Second, the plaintiffs were estopped from claiming that portion of the route in question was a public road. The defendants appeal. The following is a synopsis of the background of the case.

The defendants own a farm of approximately 193 acres in Wright County. Prior owners of that farm were the Walkers and the Morses. The defendants bought it from the Morses in 1985. Wright County Road 446 cuts across the section of land north of the Wiles' farm.

Plaintiffs' Dodge owned a farm that adjoined the Wiles farm on the south. At one time, through the purchase of tracts that had been separately owned, the Dodge farm encompassed 1,321 acres. It included the Parmenter tract, the Vining tract and the Brewster tract. The Dodge farm is bounded on the west by a county road. The Dodge house is adjacent to that county road.

The road in question is referred to as the Old Vining Road, and in their brief the defendants establish that it is known as County Road 445. It is apparent that at one time the road connected Farm Road 446 and the county road adjacent to the Dodge house. County Road 445 meandered in a general southwest direction from Farm Road 446 to the county road. In doing so, it provided access to the Wiles house and tract, the Laub house and tract, the Parmenter house and tract, and the Vining house and tract. The Brewster house and tract was reached by a branch of that road. The land adjacent to the road is used for cattle and timber. It may be inferred that so far as the road was concerned it was "open range."

The road was maintained by the road district. It was used by the public. That use included a school bus route. The defendants concede that County Road 445 was a public road. By their brief they concede that it is still a public road to a gate south of the driveway of the Wiles house, referred to by the parties as Gate A.

The Dodges first purchased the Vining tract. With the exception of the Parmenter two-acre tract, they acquired the balance of their farm in 1959. They acquired the Parmenter two-acre tract in 1966. The Vining house was occupied by tenants until at least 1965. The Parmenter two-acre tract was occupied by the Parmenter family, including plaintiff William C. Parmenter from 1953 to 1962. It was occupied by an unidentified owner until 1966. When the Dodges acquired that tract in 1966, they had the house torn down.

The Walkers established the Wiles farm by the purchase of four separate tracts.

The Walkers purchased the Laub tract, then owned by the Bellevilles, in 1971. In 1971, they built a new house on the disputed road a short distance from Wright County 445. They used the house on the Laub tract as a guest house. The Walkers sold the farm to the Morses in 1979. The Morses sold their farm to the Wiles in 1985.

In October, 1985, the Wiles entered into a contract to purchase approximately 200 acres from the Dodges. The 200 acres included the Parmenter two-acre tract. The purchase by the Wiles was not consummated. In March, 1986, plaintiffs Parmenter purchased from Dodge a tract of an undisclosed number of acres that includes the Parmenter two-acre tract.

For many years a wire gate (referred to as Gate B) was maintained across the road in the fence that divided the Dodge and Wiles farms. About 1970 Russell Belleville built a wire gate (referred to as Gate L) across the road south and west of their house. This gate is on the road approximately 765 feet north of Gate B. Then in 1971 or 1972, the Walkers built a gate (referred to as Gate A) across the road approximately 1720 feet north of Gate L. Gate A is just south of the driveway from the road to the Walker (now Wiles) house. From Gate A it is approximately 1,800 feet on the road northeasterly to the junction of the road and Wright County Road 446.

In April 1986, William Parmenter was driving his pickup truck to his property to prepare for using that property for cattle. Near Gate L (near the Laub house) he encountered Wiles' hired hand George Holmes. Parmenter told Holmes that Gate A should be left open as it hindered him in the use of his newly purchased property. He added that the road grader would soon be coming down the road. Holmes objected because they had livestock in the area. Thereafter, defendants Wiles locked Gate A. This action was then filed.

The defendants state six points on appeal. Four of those points are based upon the proposition that the Old Vining Road had been abandoned as a public road. In the alternative, they argue it was abandoned as a public road south of Gate A, and in all events south of Gate L.

■ As stated, the defendants conceded that at one time the road was a public road. In view of that admission,

the right to use it as a public highway became vested in, and inured to the benefit of, the public ...; and, absent vacation in a statutory proceeding under Chapter 228, such right of use thereafter could not have been divested except upon abandonment of the disputed road for 'nonuser by the public' for the period specified by statute, to-wit, now 'five years continuously'....

*State ex rel. Carter County v. Lewis*, 294 S.W.2d 954, 958 (Mo.App.1956) (citations omitted). The defendants had the burden to establish such abandonment. Id. The proof needed to meet that burden has been succinctly summarized.

In order for a public road to be vacated by abandonment, the nonuse not only must be shown for the statutory period but such nonuse must be a clear and entire abandonment by the public. That it is used infrequently, intermittently or rarely does not meet the standard. If used at all, the road will not be deemed abandoned.... The fact that only part of the road is used, ... or that it ends in a cul-de-sac or dead end, ... does not constitute sufficient evidence of nonuse and abandonment. Further, once a road is established as a public road, its use inures to and becomes affected by a public interest, and the right to use it cannot be abandoned unless all the public concurs.

*Hedges v. County Court for Ray County*, 581 S.W.2d 73, 78 (Mo.App.1979) (citations omitted). Also see *State ex rel. Perkins v. Taylor*, 666 S.W.2d 853 (Mo.App.1984); *Seaton v. Weir*, 633 S.W.2d 212 (Mo.App. 1982); *Connell v. Baker*, 458 S.W.2d 573 (Mo.App.1970). It is established that the presence of a gate, shown by the evidence to be locked only occasionally, or a cattle guard across the road does not establish such an abandonment. *State ex rel. Perkins v. Taylor, supra; Osburn v. Supreme Express & Transfer Co.*, 590 S.W.2d 360 (Mo.App.1979).

■ To establish abandonment the defendants repeatedly emphasize testimony

such as the following. That after the construction of Gate A, the road was maintained by the county beyond that gate only upon the request of Walker or Morse. The last maintenance south of Gate L was in 1979. The gates were often kept locked. Members of the public seen approaching Gate A turned back. The Dodges accepted a key to the lock at Gate A. After the construction of that gate, the only use of the road other than by the Walkers and Morses was permissive.

In relying upon such evidence, the defendants overlook, or minimize by strained favorable inference, evidence contrary to their position. In doing so, they do not take cognizance of the rules of appellate review of the action of the trial court. Those rules include the following. "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(a)(2).

> This court defers to the trier of fact on such issues and cannot substitute its judgment for that of the trier of fact. Such deference is not limited to the issue of credibility of witnesses, but also to the trial court's conclusions, and all fact issues are deemed to have been found in accordance with the result reached by the trial court.

*Askins v. James,* 642 S.W.2d 383, 386 (Mo. App.1982).

> The scope of review in this case was stated in *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976): the decree or judgment of the trial court will be sustained (1) unless there is no substantial evidence to support it; or (2) unless it is against the weight of the evidence; or (3) unless it erroneously declares the law; or (4) unless it erroneously applies the law.

*Wojtkowski v. Shelter Insurance Companies,* 702 S.W.2d 74, 76 (Mo. banc 1985).

The defendants' argument ignores testimony such as the following. Frank Dodge testified he used the road as a matter of right to reach his property approximately twice each year. He used the road in 1985 for hauling logs. Frank Dodge encountered a locked gate only once. Myrna Dodge never encountered a locked gate. William C. Parmenter testified that in 1980,

without hindrance, he drove to Gate L to coon hunt. Erval Rader drove, without obstruction, to Gate B in 1983 to hunt in the area. The road was driven each year by Jerry Dennis to the Dodge land to hunt on that land with the permission of Dodge. There was testimony the road was maintained by county employees to Gate B as late as 1979. It was graded to the Laub house as late as 1982. The road was used for electric distribution lines as far as the Dodge house. The distribution cooperative sprayed the right-of-way in 1982. At that time it used the road to trim the trees around the line at the Laub house and the Parmenter two-acre tract.

As noted, the fact the road "is used infrequently, intermittently or rarely does not meet the standard. If used at all, the road will not be deemed abandoned.... The fact that only part of the road is used, ... or that it ends in a cul-de-sac or dead end, ... does not constitute sufficient evidence of nonuse and abandonment." *Hedges v. County Court for Ray County,* supra, at 78 (citations omitted). The trial court expressly concluded "[t]he aforesaid road was not abandoned by nonuser for a continuous five (5) years because there was a preponderance of the evidence that the roadway was used at least annually from the time the roadway was established till the present." That conclusion is supported by the evidence and the four points of the defendants based upon abandonment have no merit. Cf. *State ex rel. Perkins v. Taylor,* supra; *Seaton v. Weir,* supra.

■ By a separate point the defendants contend the trial court erred because the plaintiffs are estopped from claiming the road was not abandoned beyond Gate A. They argue that Dodge agreed to and had benefits of the construction of Gates A and L and constructed Gate B. This permitted Walker to disc the roadway between Gates L and B and sow the same with grass. The result was that when the Wiles purchased their property, there was no evidence of a road south of Gate L.

Again the defendants ignore evidence that causes the basis of their claim for estoppel to be a disputed factual issue. Belleville asked Frank Dodge if he could build Gate L for protection of his livestock.

Dodge said "it was okay" and helped build a wire gate. He gave Walker permission to construct Gate A. Later Walker told Myrna Dodge they were going to be gone and asked if he could put a lock on Gate A. Mrs. Dodge assented and accepted a key. There was no discussion of the character of the road or the right to use the road.

The action of Walker in sowing a portion of the road in grass is comparable to the action of the landowner in *McDonald Special Road District v. Pickett*, 694 S.W.2d 273 (Mo.App.1985). In that case the court declared:

> This court holds that the conduct of the Picketts in constructing a fence across Road A, thereby blocking access to it, and in causing Road A to be disked and sown in grass, was unlawful and that the conduct of the prior commissioners of the district in encouraging that conduct or in participating in it constitutes no basis for invoking the doctrine of equitable estoppel against the district.

Id. at 278.

Moreover, there was evidence that even after a portion of the road had been sown with grass it maintained the appearance of a roadway. It had such an appearance to Parmenter in 1980. It was apparent to Sheriff Leo Bradshaw when he drove the road in 1986 to the Parmenter tract. The road was graded and obvious from Wright County Road 446 to the Laub house. The visible roadway extended through the Wiles property to Gate B on the line between the Wiles and Dodge farms. This was open to observation by the Wiles.

■ A public road cannot be abandoned by agreement. *County of Bollinger v. Ladd*, 564 S.W.2d 267 (Mo.App.1978). An applicable principle has been expressed in the following terms: "The doctrine of estoppel is not generally applicable against a governmental body. If it is applied, it is done so only in exceptional circumstances and with great caution." *State ex rel. Southland Corporation v. City of Woodson Terrace*, 599 S.W.2d 529, 531 (Mo.App. 1980). Such exceptional circumstances do not exist in this case.

■ Further, even assuming a personal estoppel of the Dodges is relevant, the evidence does not establish that the trial court erred. The evidence created a disputed factual issue concerning the responsibility for construction of Gates A and L, whether or not the conduct of the Dodges provides a basis for estoppel and whether or not the Wiles are held to notice of the roadway. Those issues have been resolved in accordance with the result reached. Rule 73.01(a)(2).

■ The defendants' final point is that the trial court erred in admitting a survey establishing the route of the disputed road. They base the point upon the surveyor's testimony he traced wheel tracks through a field to Gate B. They also argue that the route between Gate L and Gate B is not an accurate location of the public road because Gate B was moved 20 feet east in 1970.

There was evidence that Gate B was so moved by the Walkers and Dodges in 1970 when they rebuilt the line fence. That being so, the road was relocated. *State ex rel. Perkins v. Taylor*, supra. The survey correctly describes the road. The defendants' final point is denied. This judgment of the trial court is supported by the evidence. The judgment is affirmed.

FLANIGAN, P.J., and HOGAN and PREWITT, JJ., concur.